FREDERICK GREEN AKA FREDERIC GREEN, APPELLANT,
*v.* THE STATE OF NEVADA, RESPONDENT.

No. 39198

December 11, 2003                                                80 P.3d 93

*Scott W. Edwards,* Reno, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

Before Rose, Leavitt and Maupin, JJ.

## OPINION

*Per Curiam:*

Frederick Green appeals from a judgment of conviction[1] entered upon jury verdicts of guilt on separate charges of sexual assault[2] and aggravated stalking.[3] Green argues that the district court improperly instructed the jury concerning its deliberative choices between the charge of aggravated stalking and the lesser-included offense of misdemeanor stalking and that the district court failed to instruct the jury that it should view Green's oral admissions with caution. We conclude that Green has failed to demonstrate that

[1]*See* NRS 177.015(3).

[2]*See* NRS 200.366.

[3]*See* NRS 200.575(2).

these unpreserved errors warrant relief and therefore affirm the judgment entered below.

## FACTUAL AND PROCEDURAL HISTORY

Green was married to the victim in this case, Ms. Camisha Linzie. The couple moved to Sparks, Nevada, in August of 2000 to live with Ms. Linzie's mother, Mona Linzie. Problems and disputes concerning money and their minor children quickly led to a very serious estrangement. Matters were also complicated by an alleged meretricious relationship between Green and Mona Linzie.

Ms. Linzie accused Green of sexual assault and repeated incidents of stalking. Police ultimately arrested him following an eight-hour standoff, which was resolved with the assistance of a professional hostage negotiator. The Washoe County District Attorney ultimately took Green to trial on two counts of sexual assault and one count of aggravated stalking.·

The trial record is replete with evidence of various degrees of harassment and physical violence perpetrated by. Green against Ms. Linzie. The primary incident took place on the evening of September 23, 2000. Ms. Linzie testified that Green entered her home, threatened her, demanded to know her whereabouts earlier in the evening, expressed suspicions of her infidelity, and proceeded to sexually assault her. When Ms. Linzie attempted an escape, Green administered a very serious physical beating upon her person interrupted only by Ms. Linzie's mother. Green fled when Ms. Linzie summoned the police. After treatment at a local hospital, Ms. Linzie found refuge with a friend by the name of Debra Stoen. Later that evening, Green left six to eight threatening messages at Ms. Stoen's residence.

Evidence at trial supported prosecution claims that Green repeatedly threatened Ms. Linzie by calling her places of residence and employment, including threats that he would ''beat her,'' ''burn her'' alive, and place bombs. He also repeatedly threatened Ms. Linzie's co-workers. Police investigators obtained statements from Green, in which he justified his communications to Ms. Linzie's friends and co-workers, claiming that he thought they were hiding Ms. Linzie and wanted them to know his side of the story. He also denied striking Ms. Linzie but confirmed his allegations of her infidelity.

As noted, the jury convicted Green of aggravated stalking and one of the two counts of sexual assault. The district court sentenced Green to consecutive terms of life imprisonment with parole eligibility in 10 years for sexual assault and 35 months to 156 months for the aggravated stalking. The district court granted Green credit of 88 days for time served, imposed lifetime supervision, a $25 administrative fee, a $150 DNA testing fee, $900 for a psychosexual evaluation, and $750 for reimbursement to Washoe County for legal representation.

## DISCUSSION

### Preservation of error on appeal

The central issue raised in this appeal involves the deliberative responsibilities of jurors concerning primary and lesser-included offenses. The district court advised the jury in two separate "transition" instructions that it must first unanimously acquit Green of the primary aggravated stalking charge before considering the lesser-included offense of misdemeanor stalking.

Green failed to object to either instruction on the ground he now asserts as error.[4] He also failed to offer an alternative instruction on the record concerning the issue. Generally, the failure to clearly object on the record to a jury instruction precludes appellate review.[5] However, "this court has the discretion to address an error if it was plain and affected the defendant's substantial rights."[6] In conducting plain error review, we must examine whether there was "error," whether the error was "plain" or clear, and whether the error affected the defendant's substantial rights.[7] Additionally, the burden is on the defendant to show actual prejudice or a miscarriage of justice.[8]

Here, we conclude that the district court erred in its instructions to the jury regarding its consideration of the lesser-included offense. But we also conclude that the error did not affect Green's substantial rights. We therefore hold that this error did not constitute "plain error" under NRS 178.602, and we affirm Green's conviction.

### Transition instructions

A "transition" instruction guides jurors in proceeding from the consideration of a primary charged offense to the consideration of a lesser-included offense. Other jurisdictions are split on the appropriate form of a transition instruction. There are four different approaches. The first approach is to give an "acquittal first" instruction, requiring unanimous agreement on acquittal as to the primary charged offense before the jurors may proceed to delibera-

---

[4]Green objected to one of the transition instructions based upon a failure to describe the lesser-included offense as a misdemeanor, but on no other ground. The district court modified the instruction based upon his objection.

[5]*Walker v. State,* 116 Nev. 670, 673, 6 P.3d 477, 479 (2000).

[6]*Gallego v. State,* 117 Nev. 348, 365, 23 P.3d 227, 239 (2001); *see also* NRS 178.602 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

[7]*See United States v. Olano,* 507 U.S. 725, 732-35 (1993) (discussing appellate court's role in applying Fed. R. Crim. P. 52(b), which is identical to NRS 178.602, in deciding whether to overturn a judgment below).

[8]*Phenix v. State,* 114 Nev. 116, 119, 954 P.2d 739, 740 (1998).

tions on the lesser-included offense.[9] This was the approach utilized by the district court below. The second approach is to give a modified "acquittal first" instruction, permitting the jurors to consider both the greater and lesser offenses in whichever order they choose, but requiring that they unanimously acquit the defendant of the charged offense before returning a verdict on a lesser-included offense.[10] The third approach is to instruct the jurors that they may consider a lesser-included offense if they have reasonably tried, but failed, to reach a verdict on the primary charge.[11] This involves a so-called "unable to agree" instruction.[12] The fourth approach is an amalgam of the "acquittal first" and "unable to agree" approaches. This "optional approach" permits the defendant to choose between the "acquittal first" and the "unable to agree" instructions. However, if the defendant does not affirmatively choose one of those instructions, the trial court may properly use either transition instruction.[13]

The district court in the present case used the following two "acquittal first" instructions. Jury instruction thirty stated in part:

> In order to find the defendant guilty of the lesser crime of misdemeanor stalking, you must unanimously agree that the accused did not threaten the victim with death or substantial bodily harm, and did not intend to cause her to be placed in reasonable fear of death or substantial bodily harm.

Jury instruction thirty-seven stated in part:

> After you have unanimously agreed that the defendant is not guilty of [aggravated stalking], you then must determine whether or not the defendant is guilty of the lesser included

---

[9]*See, e.g., State v. Taylor,* 677 A.2d 1093, 1097 (N.H. 1996); *State v. Sawyer,* 630 A.2d 1064, 1073 (Conn. 1993); *State v. Townsend,* 865 P.2d 972, 979 (Idaho 1993); *State v. Van Dyken,* 791 P.2d 1350, 1361 (Mont. 1990); *People v. Boettcher,* 513 N.Y.S.2d 83 (Ct. App. 1987); *Lindsey v. State,* 456 So. 2d 383, 387-88 (Ala. Crim. App. 1983); *Lamar v. State,* 254 S.E.2d 353, 355 (Ga. 1979).

[10]*See, e.g., People v. Berryman,* 864 P.2d 40, 57 (Cal. 1993), *overruled on other grounds by People v. Hill,* 952 P.2d 673 (Cal. 1998); *Dresnek v. State,* 697 P.2d 1059, 1063-64 (Alaska Ct. App. 1985); *see also* California Jury Instruction, Criminal 17.10 (the jury may consider both the greater and lesser offenses in whatever order it chooses, but the district court cannot accept a guilty verdict on a lesser crime unless the jury unanimously finds the defendant not guilty of the charged greater crime).

[11]*See, e.g., State v. LeBlanc,* 924 P.2d 441, 443-44 (Ariz. 1996); *State v. Ferreira,* 791 P.2d 407, 409 (Haw. Ct. App. 1990); *State v. Allen,* 717 P.2d 1178 (Or. 1986); *People v. Handley,* 329 N.W.2d 710, 712 (Mich. 1982).

[12]Courts also identify this type of instruction as the "reasonable efforts" instruction. *See, e.g., LeBlanc,* 924 P.2d at 442.

[13]*See, e.g., Jones v. U.S.,* 620 A.2d 249, 251-52 (D.C. 1993); *State v. Powell,* 608 A.2d 45, 46-47 (Vt. 1992); *United States v. Jackson,* 726 F.2d 1466, 1469-70 (9th Cir. 1984); *United States v. Tsanas,* 572 F.2d 340, 346-47 (2d Cir. 1978).

crime of Misdemeanor Stalking. If you unanimously agree that the defendant is guilty of Misdemeanor Stalking, you will sign and date the verdict form provided and present it, and your not guilty verdict for the Aggravated Stalking charge to the court.

. . . .

You will note from this instruction that you must unanimously agree that the defendant is not guilty of the charged crime before you may find the defendant guilty or not guilty of any lesser charge.[14]

We have not yet had an occasion to review a criminal conviction based upon the use of an "acquittal first" instruction as a guideline for jury deliberations on lesser-included offenses. In our view, use of an "acquittal first" instruction improperly invites compromise verdicts. If members of a jury believe that the defendant is guilty of some offense, an inability to unanimously agree to convict or acquit manifestly increases the likelihood that the jury will compromise by convicting the defendant of the primary or charged offense, rather than risk a mistrial and free a guilty defendant by returning no verdict at all. As one court has stated:

> When the jury is instructed in accordance with the "acquittal first" instruction, a juror voting in the minority probably is limited to three options upon deadlock: (1) try to persuade the majority to change its opinion; (2) change his or her vote; or (3) hold out and create a hung jury.[15]

Thus, given these choices, it is possible a jury would return a verdict even though not all members of the jury were convinced beyond a reasonable doubt that the evidence supported their verdict.

We adopt the "unable to agree" instruction embraced by Arizona, Hawaii and Oregon as the correct transition instruction. Use of the "unable to agree" instruction reduces the risk of compromise verdicts by enabling the finders of fact to better gauge the fit between the evidence adduced at trial and the offenses being

---

[14]As noted, Green asserts that the district court committed reversible error in its use of the "acquittal first" approach. As also noted, Green lodged no objection to these instructions, other than as described *supra* note 4. Green also urges us to adopt the "optional approach" instruction as the proper method of transition instruction in Nevada. He contends that he proposed a jury instruction that did not require unanimity with respect to acquittal on the charged offense before proceeding to the lesser-included offense, but concedes that this instruction does not appear in the record. He asks us to infer from his proposed jury instruction on attempted sexual assault, which did not require unanimity and does appear in the record, that he chose to have the jury instructed with an "unable to agree" instruction and thus the district court should have used his choice of transition instruction. This is likewise insufficient to preserve this latter argument.

[15]*Allen,* 717 P.2d at 1180.

considered. The instruction also reduces the risk of hung juries and the significant costs involved with retrial. While Green urges us to adopt the "optional approach," we decline to do so because, in the absence of an affirmative choice by the defendant, the "optional approach" would give the district court discretionary power to choose the "acquittal first" instruction. The district court should not have the discretion to use that instruction and the "unable to agree" instruction should be the only transition instruction given in Nevada. We therefore adopt the "unable to agree" instruction as the proper method of instructing juries on the consideration of lesser-included offenses. Consistent with this approach, when a transition instruction is warranted, the district court must instruct the jury that it may consider a lesser-included offense if, after first fully and carefully considering the primary or charged offense, it either (1) finds the defendant not guilty, or (2) is unable to agree whether to acquit or convict on that charge.[16]

Given our rejection of the "acquittal first" instruction, we hold that the district court erred in taking the "acquittal first" approach. But we further conclude that this error did not affect Green's substantial rights because there is overwhelming evidence of Green's guilt of aggravated stalking.[17]

To explain, for the jury to convict Green of aggravated stalking, rather than misdemeanor stalking, it must have found that Green placed Ms. Linzie "in reasonable fear of death or substantial bodily harm."[18] Ms. Linzie, her friends and co-workers testified to Green's continuing telephone calls and threats of violence, including threats to douse Ms. Linzie in gasoline, set her on fire and to bomb her place of residence, all of which placed her in reasonable fear of death or substantial bodily harm.[19] Green's own statements did little to rebut the overwhelming evidence of his guilt on both of the charges upon which the jury found him guilty. Thus, while the district court erred in using an "acquittal first" jury instruction, we are convinced that the result at trial would not have been different had the jury been properly instructed and therefore this error did not affect Green's substantial rights. Because this error did not affect Green's substantial rights, it does not warrant relief under the plain error rule.

[16]*See LeBlanc,* 924 P.2d at 442.

[17]Because this error clearly did not affect Green's substantial rights, we need not address what would normally be the second inquiry under the plain error rule—whether the error is "plain."

[18]NRS 200.575(2).

[19]*See Rossana v. State,* 113 Nev. 375, 383, 934 P.2d 1045, 1050 (1997) (for a conviction of aggravated rather than misdemeanor stalking to stand, the jury must have found that a defendant threatened the victim with the intent to cause the victim to be placed in reasonable fear of death or substantial bodily harm, and the victim thereby was placed in reasonable fear as a result).

*Failure to instruct concerning statements made to police*

Green also claims that the district court failed to instruct the jury that it should regard Green's admissions to the police with caution. Green failed at trial to offer an instruction to that effect. Accordingly, this claim is likewise unpreserved. We therefore review this claim for plain error. We conclude that there was no error.[20]

## CONCLUSION

Green failed to preserve his claim concerning the ''transition'' instructions governing jury deliberations over the primary and lesser-included stalking charges. Although we conclude that the district court should have given an ''unable to agree'' instruction rather than an ''acquittal first'' instruction, we further conclude that this error does not constitute ''plain error'' as it did not affect Green's substantial rights. We have considered Green's remaining claim on appeal and have rejected it.

Accordingly, we affirm Green's judgment of conviction.

---

[20]*See Ford v. State,* 99 Nev. 209., 212, 660 P.2d 992, 993 (1983) (lack of instruction to the jury to view oral admission with caution was not error).