An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

CHARLES P. NELSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 58935

**FILED**

SEP 2 6 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of robbery, conspiracy to commit robbery, first-degree kidnapping, robbery with the use of a deadly weapon, burglary while in the possession of a deadly weapon, first-degree arson, grand larceny of a motor vehicle, and first-degree murder. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

Appellant Charles Nelson appeals, presenting the following issues: (1) whether sufficient evidence supports the jury's verdict, (2) whether an in-court identification of Nelson violated his due process rights, (3) whether the district court abused its discretion in admitting the evidence of the gun that was seized from a vehicle driven by Nelson, (4) whether the district court abused its discretion in precluding Nelson from asking Jacqueline Frenchwood about the prior dishonest acts that appeared within her Presentence Investigation Report (PSI), (5) whether the district court violated Nelson's right to confrontation in reading a non-testifying codefendant's letter into evidence, (6) whether the district court deprived Nelson of his right to present his theory of the case by precluding him from presenting evidence of a murder charge against Joseph Fleming,

13-28797

and (7) whether the State engaged in prosecutorial misconduct.[1] For the reasons set forth below, we affirm the judgment of conviction. As the parties are familiar with the facts of this case, we do not recount them further except as necessary for our disposition.

## DISCUSSION

*Substantial evidence supporting the verdict*

Nelson argues that there was insufficient evidence to sustain the jury's verdict. We disagree.

In reviewing the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006) (alteration in original) (internal quotations omitted). The jury, and not this court, has the job of weighing the evidence and determining the credibility of witnesses. *Id.* "Circumstantial evidence alone may sustain a conviction." *McNair v. State*, 108 Nev. 53, 61, 825 P.2d 571, 576 (1992). We do not disturb a jury's verdict if substantial

---

[1]Nelson also argues that (1) the district court abused its discretion in giving various jury instructions and in denying Nelson's motion for a mistrial based on the spectators' conduct, (2) NRS 51.345 violates the United States Constitution, and (3) cumulative errors warrant a new trial. We determine that these contentions lack merit. Nelson also argues that the district court abused its discretion in denying his for-cause challenges to prospective jurors who made statements that raised some doubt as to their objectivity. Nelson's argument does not warrant reversal; he fails to show that the empaneled jury included these challenged jurors or that it was biased, as is required for reversal. *See Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005).

evidence supports it. *Tellis v. State*, 85 Nev. 679, 679-80, 462 P.2d 526, 527 (1969).

### *NRS 175.291(1) and Frenchwood's testimony*

NRS 175.291(1) provides that a defendant cannot be convicted based on accomplice testimony if it is not "corroborated by other evidence which in itself . . . tends to connect the defendant with the commission of the offense." An accomplice is "one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." NRS 175.291(2).

Nelson argues that Frenchwood, a witness who testified at trial, was an accomplice. But, the evidence presented did not establish Frenchwood as an accomplice. Her testimony indicated that she was not included in the conversations between Nelson and his codefendant that preceded their crimes, such that she lacked a chance to learn of their criminal intentions. Frenchwood knew that the codefendant tried to engage in a drug deal, but Nelson and the codefendant were not prosecuted for drug-related crimes, so Frenchwood's knowledge of this fact did not make her an accomplice.

In asserting that Frenchwood was an accomplice, Nelson relies on a detective's testimony, wherein the detective stated that during his investigation he told Frenchwood that "it's better to be a witness th[a]n a suspect." But Nelson overlooks the remainder of the detective's testimony. When asked about this statement, the detective testified that although he did not develop information to suggest that Frenchwood engaged in the crimes, "she could have been an accessory to the incident." The detective's testimony revealed that he implied an ultimatum to Frenchwood to be cooperative but failed to find evidence to make Frenchwood an accomplice.

Accordingly, we conclude that NRS 175.291(1) did not apply to Frenchwood and that her testimony could be a basis for Nelson's conviction.

*Robbery*

"Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury . . . to his or her person or property." NRS 200.380(1).

An autopsy showed that Heckard was beaten, which, in light of the other evidence, indicated that someone used force to subdue Heckard and take his property. Two witnesses placed Nelson at and near Heckard's home during the crimes and shortly thereafter. Alonzo Woods testified that Nelson was the person who pointed a gun at him inside Heckard's home. Frenchwood testified that, after the events at Heckard's home, the codefendant drove her vehicle, picked up Nelson, and drove toward Heckard's home; the route that Frenchwood described was in the vicinity of where the police recovered Heckard's wallet. Frenchwood also testified that while she was in the vehicle, she saw Nelson holding gold jewelry and drugs. She further testified that, at some point, she overheard Nelson make an incriminating statement during a phone conversation in which he stated, "[I]t wasn't supposed to go like that . . . . [I] was only supposed to rob him." This evidence, in conjunction with the evidence below, was sufficient to establish Nelson's guilt for robbery.

*Conspiracy to commit robbery*

"Conspiracy is an agreement between two or more persons for an unlawful purpose." *Thomas v. State*, 114 Nev. 1127, 1143, 967 P.2d 1111, 1122 (1998). Conspiracy is proven if a series of acts that further the

crime provide enough information to infer the existence of the agreement. *Id.*

Frenchwood testified that before the crimes the codefendant and Nelson carried on a conversation in which they excluded Frenchwood, after which the codefendant drove them to Heckard's home. The codefendant went inside the home and returned to her vehicle. Nelson then got out of the vehicle and entered the home. As the codefendant drove away, she made a statement to Frenchwood that expressed her regret for bringing Frenchwood along, providing some indicia that the codefendant knew that Nelson intended to engage in a crime inside the home. The intended crime was a robbery, as was shown by the testimony about Nelson's phone conversation during which he expressed that he was "supposed to rob him." Thus, Frenchwood's testimony was sufficient to support Nelson's conviction of conspiracy to commit robbery.

*First-degree kidnapping*

NRS 200.310 defines first-degree kidnapping as "willfully . . . hold[ing] or detain[ing][ ] the person . . . for the purpose of committing . . . robbery upon or from the person, or for the purpose of killing the person or inflicting substantial bodily harm upon the person." In this case, Frenchwood's and Woods' testimony placed Nelson at the scene of the crimes, wherein Heckard was found dead with his hands tied. This evidence, in conjunction with the evidence above and the testimony regarding the police investigation, was sufficient for one to reasonably infer that Nelson and the other man in the home detained Heckard for the purpose of beating, killing, or robbing him. Thus, the evidence was sufficient for Nelson's conviction of first-degree kidnapping.

*Robbery with the use of a deadly weapon*

A defendant is guilty of robbery with the use of a deadly weapon where he or she uses a deadly weapon to unlawfully take another person's property against the other person's will by force, violence, or fear of injury. NRS 200.380(1); NRS 193.165(1). Here, Woods testified that Nelson pointed a gun at him and that Nelson and another man took his money and jewelry. This testimony was sufficient evidence for Nelson's conviction of robbery with the use of a deadly weapon.

*Burglary while possessing a deadly weapon*

Burglary while in the possession of a deadly weapon is the act of "enter[ing] any house . . . with the intent to commit . . . any felony," NRS 205.060(1), while also possessing a deadly weapon. NRS 205.060(4). Frenchwood's and Woods' testimony revealed that Nelson entered Heckard's home with the intent to commit a felony and that Nelson had a gun, which was sufficient evidence for Nelson's conviction of burglary while in possession of a deadly weapon.

*First-degree arson*

NRS 205.010 defines first-degree arson as "willfully and maliciously set[ting] fire . . . or . . . aid[ing], counsel[ing] or procur[ing] the burning of any . . . house." In this case, a fire investigator testified that a fire started in Heckard's bedroom and that he believed the fire to be the result of "an act of a person trying to put an open flame to ordinary combustibles." This testimony, in conjunction with the other evidence that placed Nelson at Heckard's home and established Nelson's criminal activity, was sufficient evidence for the verdict that Nelson committed first-degree arson. *See* NRS 205.010.

*Grand larceny of a motor vehicle*

Grand larceny of a motor vehicle is the act of "intentionally steal[ing]" another person's "motor vehicle." NRS 205.228(1). Frenchwood testified that she saw a man who resembled Nelson in Heckard's car, at which time she overheard the codefendant say on her cell phone, "[W]hat . . . are you doing in his car?" Frenchwood further testified that the codefendant picked Nelson up at a location where Heckard's car was abandoned and asked him, "[W]hy were you in the car[?]" This testimony was sufficient to support the verdict that Nelson committed grand larceny of a motor vehicle.

*First-degree murder*

"The felony-murder rule makes a killing committed in the course of certain felonies murder, without requiring the State to present additional evidence as to the defendant's mental state." *Rose v. State*, 127 Nev. ___, ___, 255 P.3d 291, 295 (2011). Under NRS 200.030(1)(b), one is guilty of first-degree murder if the killing is "[c]ommitted in the perpetration or attempted perpetration of . . . kidnapping, . . . robbery, [or] burglary." Here, the evidence established that Heckard was beaten and killed at the time that Nelson committed first-degree kidnapping and robbery. Hence, there was sufficient evidence to conclude that Nelson killed Heckard in the commission of these other felonies, thereby supporting a conviction of first-degree murder.

In light of the above, we conclude that sufficient evidence supports Nelson's convictions. Thus, we will not disturb the verdict.[2]

---

[2]To the extent that Woods contests the verdict because of a lack of DNA evidence and witness credibility, his arguments do not warrant

*continued on next page . . .*

 

*Woods' in-court identification of Nelson*

Nelson contends that the State repeatedly showed Woods photographs of Nelson before trial, which enabled Woods to identify Nelson at trial. Nelson argues that the repeated exposure to his image was a suggestive pretrial identification procedure that tainted Woods' in-court identification of Nelson and violated Nelson's constitutional rights. Based on our de novo review of this evidentiary issue that implicated Nelson's due process rights, we disagree. *See Hernandez v. State*, 124 Nev. 639, 646, 188 P.3d 1126, 1131 (2008) (providing that the admission of evidence that involves constitutional rights is reviewed de novo).

This court employs a two-step test for determining whether an identification of the defendant as a result of pretrial identification procedures violated his or her due process rights. *Banks v. State*, 94 Nev. 90, 94, 575 P.2d 592, 595 (1978). First, we assess whether the identification procedures were "'so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellant] was denied due process of law.'" *Id.* (alteration in original) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967), *disapproved on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 326 (1987)). A photographic lineup is suggestive where it was "'so unduly prejudicial as [fatally to] taint [the defendant's]

---

*. . . continued*

reversal. Although DNA may be sufficient for guilt, it is not necessary. *See McNair v. State*, 108 Nev. 53, 61, 825 P.2d 571, 576 (1992). Also, the weight given to a witness's testimony in light of his or her credibility rests with the jury—not this court. *See Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006).

conviction.'" *Cunningham v. State*, 113 Nev. 897, 904, 944 P.2d 261, 265 (1997) (quoting *Simmons v. United States*, 390 U.S. 377, 383 (1968)). Second, this court asks whether the identification of the defendant is reliable despite the suggestive pretrial identification procedures. *Banks*, 94 Nev. at 94, 575 P.2d at 595.

The arguments on appeal and the record fail to give a clear depiction of how many of the pretrial photographic lineups included Nelson's photograph and if Woods told the State that he would identify Nelson. Nonetheless, Woods' in-court identification of Nelson was reliable. He testified that Nelson pointed a gun at him and that he gave the police a description of the gunman, which resembled Nelson. Woods explained that he did not identify Nelson in the past because he did not want to be a snitch but identified Nelson at trial so as to give closure to Heckard's family. We conclude that the reliability of Woods' in-court identification overcame any alleged improprieties in the identification procedures. Thus, there was no denial of due process.

*Evidence of the gun that was seized from a vehicle driven by Nelson*

Nelson argues that the district court abused its discretion in admitting a gun into evidence that was seized from a vehicle that he had driven, contending that it lacked relevance and was evidence of a prior bad act. Based on our review of the district court's discretion in admitting this evidence, we disagree. *See Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) (providing that we review a district court's admission of evidence for abuse of discretion).

The State made a pretrial motion to admit the gun into evidence because it matched Woods' description of the gun. Nelson

objected, arguing that the gun must be excluded as evidence of a prior bad act. The gun was admitted into evidence.

Relevant evidence is generally admissible, NRS 48.025, and is "evidence having any tendency to make the existence of any fact . . . of consequence . . . more or less probable." NRS 48.015. But, relevant evidence must be excluded if its prejudicial value substantially outweighs its probative value. NRS 48.035(1). Often, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." NRS 48.045(2).

The gun was admissible evidence. It resembled the gun that Woods described; hence, it was relevant to the crimes. Also, Nelson rejected the district court's invitation to give a limiting instruction that would prohibit the jury from considering Nelson's gun possession as evidence of a prior bad act. Accordingly, we conclude that the district court did not abuse its discretion in admitting the gun into evidence.

*Frenchwood's prior dishonest acts that were in a PSI*

Nelson argues that the district court abused its discretion in precluding him from impeaching Frenchwood by inquiring about prior dishonest acts that appeared in her PSI. Given our review of the district court's discretion to exclude this evidence, we find that any abuse of discretion was harmless error. *See Mclellan*, 124 Nev. at 267, 182 P.3d at 109; *see also Knipes v. State*, 124 Nev. 927, 933-34, 192 P.3d 1178, 1182-83 (2008) (providing that we do not reverse on an abuse of discretion when it was harmless error); *Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (providing that an error is not harmless when it has a substantial and injurious effect on the verdict).

NRS 50.085(3) governs this issue and provides that

> [s]pecific instances of the conduct of a witness, for the purpose of attacking . . . the witness's credibility, other than conviction of crime, may not be proved by extrinsic evidence. They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to an opinion of his or her character for truthfulness or untruthfulness . . . .

In this case, the information in the PSI pertained to Frenchwood misrepresenting herself on multiple occasions, which related to her honesty. Thus, this evidence was admissible. *See* NRS 50.085(3). Although Nelson was precluded from exposing the information within Frenchwood's PSI, Nelson elicited other testimony that called into doubt Frenchwood's honesty, including her prior conviction of attempted burglary, her use of drugs before her testimony, her dislike for Nelson, and her failure to tell the truth to a detective until he implied an ultimatum to her. Accordingly, the preclusion of testimony about the PSI information was harmless error and does not require reversal.

*Nelson's right to confrontation*

Nelson argues that the district court violated his right to confrontation in reading a letter by the non-testifying codefendant that included references to a male that the jury could equate to Nelson. Because Nelson did not object, but only requested a limiting instruction, we review this issue for plain error. *See Green v. State,* 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Plain error is one that is "clear" and "affect[s] the defendant's substantial rights." *Id.*

The letter contained the following: "They only have [Frenchwood] placing me there. . . . He needed me to go handle business

for him . . . . [It] was bad, and he did not want to face the N[  ] that he had f[  ] with." A limiting instruction stated that this letter could only be considered for the codefendant's guilt. Here, the word "he," while not expressly naming Nelson, could lead the jury to infer that "he" referred to Nelson.

In *Bruton v. United States*, 391 U.S. 123, 135-36 (1968), the United States Supreme Court held that a non-testifying codefendant's confession cannot be introduced into evidence at a joint trial if the confession implicates another codefendant, even if the jury is instructed to consider the confession only as evidence of the confessing codefendant's guilt. Later, in *Gray v. Maryland*, 523 U.S. 185, 192 (1998), the Court considered the effect of a confession that simply replaced the non-confessing codefendant's name with a blank space. The *Gray* Court concluded that this was the functional equivalent of an express implication of the non-confessing codefendant and, as a result, his Confrontation Clause rights were violated. *Id.* at 192-95.

In this matter, "he" is much like the blank space in *Gray* that compromised the codefendant's Confrontation Clause rights. Yet, the reading of the letter was not plain error. During cross-examination, the codefendant's attorney elicited from the detective an interpretation of the letter, and the detective interpreted "he" as referring to Heckard. Hence, given this evidence and the other evidence of Nelson's guilt, the letter that, in context, referred to Heckard did not affect Nelson's substantial rights.

*Evidence of an unrelated murder charge*

The State moved to preclude Nelson from asking the detective about his knowledge of Joseph Fleming and an unrelated murder charge against Fleming. The district court granted the motion. Nelson argues

that the district court deprived him of his constitutional right to present his theory of the case by barring the evidence regarding Fleming's murder charge. As this evidentiary issue implicates Nelson's constitutional rights, we review the issue de novo. *Hernandez v. State*, 124 Nev. 639, 646, 188 P.3d 1126, 1131 (2008).

The constitutional right to present one's defense is subject "to the rules of evidence, including the rules that evidence must be relevant, and that even relevant evidence is inadmissible if its probative value 'is substantially outweighed by the danger of unfair prejudice ... or of misleading the jury.'" *Rose v. State*, 123 Nev. 194, 205 n.18, 163 P.3d 408, 416 n.18 (2007) (quoting NRS 48.035(1)). The testimony that Nelson sought pertained to an *unrelated* murder for which Fleming had not yet been tried. The testimony could serve few purposes other than to suggest that Fleming likely murdered Heckard because he *possibly* committed an unrelated murder, thereby presenting the risk of misleading the jury. Accordingly, we conclude that the district court did not deprive Nelson of his right to present a defense by precluding him from presenting evidence of an unrelated murder charge against Fleming.

*Prosecutorial misconduct*

Nelson asserts that the State engaged in prosecutorial misconduct by making statements that shifted the burden of proof, intimated that Nelson was just trying to avoid jail, and referenced facts not in evidence. "[We] will not reverse a conviction based on prosecutorial misconduct if it was harmless error. . . . If the error is not of constitutional dimension, we will reverse only if the error substantially affects the jury's verdict." *Valdez v. State*, 124 Nev. 1172, 1188-89, 196 P.3d 465, 476 (2008). But if the error is of a constitutional dimension, we will reverse

SUPREME COURT
OF
NEVADA




(O) 1947A

unless it is shown, "beyond a reasonable doubt, that the error did not contribute to the verdict." *Id.* at 1189, 196 P.3d at 476. The prosecutor's "statements should be considered in context." *Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004).

*The State did not shift the burden of proof*

In the State's rebuttal closing argument, the prosecutor stated the following: "[A]lthough they said it over and over again[,] the State didn't prove beyond a reasonable doubt. It's their burden. They didn't prove it. Neither of them took the time to tell you what that burden is." Nelson objected, and the district court sustained the objection.

The prosecutor made this statement while paraphrasing Nelson's closing argument. When reading the statement in its context, it conveys that Nelson told the jury that the State had the burden of proof but did not define that burden. After paraphrasing the argument, the prosecutor advised the jury to rely on the jury instructions in determining whether the State met its burden. The jury instructions stated that the State had the burden of proof. Thus, we conclude that the paraphrasing of Nelson's argument was not prosecutorial misconduct.

*The "get out of jail fee card" statement*

During closing arguments, the prosecutor also stated that Nelson attempted to convince the prosecution to give Nelson a "get out of jail free card." Nelson objected to this statement, and the district court sustained the objection while ordering that it be stricken from the record. Given the district court's response, we conclude that the statement was

harmless because the jury was instructed to disregard it.[3] *See McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004) (providing that we presume that juries follow the district court's instructions).

For the foregoing reasons, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

cc:    Hon. Douglas W. Herndon, District Judge
Christopher R. Oram
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

---

[3]In closing arguments, the prosecutor stated that "[i]n 2001 [and] 2002, . . . [Frenchwood] attempted to go in a store and steal something." Nelson objected that these facts were not in evidence. The district court sustained the objection. Arguing facts not within the evidence was prosecutorial misconduct, but we conclude that the misconduct was harmless error as the district court sustained the objection. *See Truesdell v. State*, 129 Nev. ___, ___, 304 P.3d 396, 402 (2013).