134 Nev., Advance Opinion 64

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| DVONTAE DSHAWN RICHARD,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 70542<br><br>FILED<br><br>AUG 23 2018<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of conspiracy to commit robbery and one count each of burglary while in possession of a firearm, grand larceny of a firearm, grand larceny, robbery with use of a deadly weapon, attempted robbery, and battery with intent to commit a crime. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Affirmed.*

Brent D. Percival, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and John L. Giordani, III, Deputy District Attorney, Clark County,
for Respondent.

BEFORE CHERRY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

We take this opportunity to clarify the definition of statutory nonhearsay pursuant to NRS 51.035. In order for a statement to be

18-32859

excluded from the definition of hearsay either as a prior inconsistent statement or a prior identification made soon after perceiving a person, the declarant must have testified and have been subject to cross-examination concerning the out-of-court statement. Although we determine that hearsay statements were improperly admitted, such errors were harmless in light of other evidence in the case.

Richard also challenges the admission of his two statements to police. We conclude that substantial evidence supports the district court's determination that both statements were voluntary.

*FACTUAL AND PROCEDURAL HISTORY*

Appellant Dvontae Richard was convicted of crimes he committed during two incidents that occurred four days apart. Only the facts surrounding the second incident are relevant to this appeal.

On the date of the second incident, Kirsten Kinard and his cousin, Eric Blake, were having Kinard's car cleaned at a car wash in Las Vegas. Kinard was wearing a Cuban link gold necklace with an estimated value of $45,000. Richard, walking with an unidentified man, approached Kinard and grabbed Kinard's necklace with enough force to pull him down by the neck. Blake reacted by drawing and discharging his firearm 17 times. Richard's accomplice returned fire. A number of people were hit amidst the chaotic shooting, including Kinard and, according to Blake, a person wearing a red hood.

Police responded to the car wash and, by following a blood trail and the directions of witnesses, found Richard. The officers described Richard as an African-American male wearing a sweatshirt with a red hood who had been shot in the leg. Richard was treated and taken to the emergency room at University Medical Center (UMC) where Kinard was also being treated for his gunshot wounds.

 

Detectives from the Las Vegas Metropolitan Police Department (LVMPD) interviewed Kinard as a victim and Richard as a suspect. Soon after the shooting, Richard made two statements, one to Detective Weirauch and another to Detective Spiotto, in which he made a number of inculpatory remarks. Both statements were audio-recorded, transcribed, and made after both detectives separately advised Richard of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

While at UMC for treatment of his gunshot wounds, Kinard described his attacker to Detective Weirauch. Additionally, as Richard was being wheeled by Kinard's room, Kinard flagged down Detective Weirauch and identified Richard as the man who tried to take his necklace.

Before trial, Richard moved to suppress his prior statements to police. After conducting an evidentiary hearing on the motion, the district court found that the State had met its burden to show, by a preponderance of the evidence, that Richard's statements were voluntary and made after he was properly given his *Miranda* warnings. Accordingly, the court denied the motion and permitted the State to present testimony regarding Richard's statements.

By the time of trial, Kinard was in custody on unrelated charges and was an unwilling witness for the State. Kinard testified in broad terms, but when asked if he could identify Richard as the person who "snatched" his chain, he simply stated "No." Kinard was never asked about his prior identification of Richard at the hospital and was never asked whether he had ever been able to identify Richard as the man who grabbed his chain.

Following the jury trial, Richard was convicted of two counts of conspiracy to commit robbery and one count each of burglary while in possession of a firearm, grand larceny of a firearm, grand larceny, robbery

with use of a deadly weapon, attempted robbery, and battery with intent to commit a crime.[1] Additionally, he pleaded guilty to the bifurcated charge of ownership or possession of a firearm by a prohibited person.

Richard raises two primary arguments on appeal: (1) that Kinard's prior description and identification of Richard, which were elicited during the testimony of Detective Weirauch, were inadmissible hearsay, admission of which violated his right to confrontation; and (2) that admission of Richard's inculpatory statements at trial violated the Fourteenth Amendment because his statements to police in the hospital were involuntary.

## DISCUSSION

*Detective Weirauch's testimony*

Richard argues that the district court erred in permitting the State to present hearsay testimony by Detective Weirauch regarding Kinard's statements in the hospital describing and identifying Richard as the man who grabbed his gold chain. Richard also contends that both the description and subsequent identification violated his Sixth Amendment right to confront Kinard as a witness against him.

NRS 51.035 defines "hearsay" as "a statement offered in evidence to prove the truth of the matter asserted," but exempts certain statements from that broad definition. A statement is not hearsay if: "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: (a) Inconsistent with the declarant's testimony." NRS 51.035(2)(a). We review the admission of Kinard's description and identification for an abuse of discretion.

---

[1]The jury acquitted Richard of first-degree kidnapping with use of a deadly weapon.

*Kinard's description of his attacker*

Although Kinard was willing to speak in general terms about the attempted robbery, he was unwilling to testify about the identifying characteristics of his attacker. The following exchange between the State and Kinard is representative of his testimony:

> Q: Okay. Now, I want to be upfront. Did you ever see the person's face that snatched your chain?
>
> A: No, I didn't, he had a hood on.
>
> Q: Okay. Do you remember the color of the hood?
>
> A: Nope, it happened so fast.
>
> Q: All right. So if I were to ask you to identify him, do you see that person in the courtroom today, what would your response be?
>
> A: No.

On direct examination, the State did not ask Kinard about his prior statements to Detective Weirauch. However, on cross-examination, Richard asked Kinard: "Do you remember giving a tape recorded voluntary statement to the police about this incident?" When Kinard claimed that he did not remember doing so, Richard showed him the transcript of his statement. Kinard confirmed that the document helped refresh his memory that he had made such a statement to police.

Kinard's statements to Detective Weirauch regarding the perpetrators were raised for the first time on redirect by the State, but they focused on Kinard's description of the other man, the shooter who accompanied Richard. The State asked about Kinard's prior description of that accomplice, referencing his race, skin tone, and haircut, but the State did not ask about Kinard's physical description of the man in the sweatshirt with a red hood. However, the State referenced Kinard's description of the hood when it asked:

Supreme Court
OF
Nevada

(O) 1947A

Q: Okay. Do you recall telling Detective Weirauch on the day you were in the hospital that it was a reddish hoodie?

A: No, I don't remember that.

Q: Okay.

. . . .

Q: Page five of the voluntary statement. Do you see here where you say—right here, "Do you remember what color the hoodie was"—

A: Yeah.

Q: —is the question asked to you and you say, "Like reddish or something. My cousin probably seen him more because, you know"—

A: Yeah.

Kinard further testified that although he did not remember making that statement, he did not dispute that portion of the transcript. The relevant portion of Weirauch's testimony, to which Richard now takes issue, reads as follows:

Q: And did you ask him, as far as identification was, of the person who took his—or attempted to take his chain?

[Weirauch]: Yes.

Q: Did he give you a description of that person?

[Weirauch]: He said he was a black male adult wearing a hoodie.

Q: Did he give you the color of that hoodie?

[Weirauch]: He said red.

Richard did not object to this testimony at trial; therefore, we review for plain error. *See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). "In conducting plain error review, we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights. Additionally, the burden is on

the defendant to show actual prejudice or a miscarriage of justice." *Id.* (footnote omitted).

The State argues that Weirauch's testimony that Kinard described his attacker as "a black male adult wearing a [red] hoodie" was properly admitted pursuant to NRS 51.035(2)(a) because Kinard testified, he was subject to cross-examination, and his trial testimony was inconsistent with that statement to Weirauch. However, Kinard was never asked about the race of the man who grabbed his chain; he was only asked about the race of the second man, the one who drew a gun.

Because Kinard did not provide any testimony that was inconsistent with his prior description of his attacker as a black male, we conclude that Weirauch's testimony regarding that racial description should not have been admitted pursuant to NRS 51.035(2)(a). However, as discussed below, Richard admitted to grabbing Kinard's chain, so the testimony regarding Richard's race did not cause him actual prejudice.

Regarding the statement about the color of the attacker's hood, Kinard testified that he did not remember telling Weirauch the color of the hood. When presented with the transcript of his voluntary statement, he did not dispute having said that. We previously held that "the failure of recollection constitutes a denial of the prior statement that makes it a prior inconsistent statement pursuant to NRS 51.035(2)(a). The previous statement is not hearsay and may be admitted both substantively and for impeachment." *Crowley v. State*, 120 Nev. 30, 35, 83 P.3d 282, 286 (2004). Pursuant to *Crowley*, Kinard's memory lapse was akin to a denial of his

prior statement, and the State could properly present his prior inconsistent statement.[2]

*Kinard's identification*

Richard argues that the district court erred in permitting Detective Weirauch to testify about Kinard's statements to him in the hospital wherein he identified Richard as the man who grabbed his chain. The disputed testimony occurred during the State's examination of the detective:

> Q: And was there a point in the interview or after the interview where [Kinard] made some identification of the defendant?
>
> A: Yes, there was.
>
> Q: And explain that to the ladies and gentlemen of the jury.
>
> A: While Mr. Kinard or Kirsten Kinard was laying in his bed he kind of flagged me down and he says that he saw the suspect that tried to grab—

At that point, Richard objected to the testimony as hearsay. The court ruled that "[p]ursuant to 50.1352 I'm going to allow it."[3]

The State continued:

> Q: Officer, when you were at the hospital with Kirsten Trevon Kinard was there a point in time where he identified the defendant as being the person who pulled off his gold chain?

---

[2]By the time the State introduced Kinard's statements through Weirauch, Blake had already testified that the man who grabbed Kinard's chain was wearing a sweatshirt with a red hood. Because that testimony regarding the color of Richard's hood was duplicative of other evidence in the case, we conclude that its admission was not error at all, much less plain error, as Richard's substantial rights were not harmed.

[3]The district court was presumably referring to NRS 50.135(2).



A: Yes, there was.

Q: Tell me exactly how that went.

A: Mr. Kinard kind of flagged me down while he was in his hospital bed and said, hey, I saw the guy get wheeled by and that's the one that actually tried to pull my chain off. And he points towards the gurney that the suspect's in.

Q: The person he's pointing towards was the person that you just identified in court today as the defendant?

A: Yes.

Before the district court, the State argued that this testimony was proper impeachment as a prior inconsistent statement. On appeal, in addition to its argument that it was properly admitted as a prior inconsistent statement, the State alleges that the statement was also admissible as an identifying statement pursuant to NRS 51.035(2)(c). We address the State's contentions separately.

*Prior inconsistent statement*

The State's first theory of admissibility is that Kinard's prior statement was properly admitted as a prior inconsistent statement. The district court allowed Weirauch to testify about Kinard's alleged identification of Richard pursuant to NRS 50.135(2), which provides in relevant part that

> [e]xtrinsic evidence of a prior contradictory statement by a witness is inadmissible unless:
>
> . . .
>
> (b) The witness is afforded an opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness thereon.

This statute is consistent with NRS 51.035(2)(a), discussed above, as it permits the admission of an out-of-court statement offered for the truth of

the matter asserted if "[t]he declarant testifies at the trial or hearing *and is subject to cross-examination concerning the statement*, and the statement is: [i]nconsistent with the declarant's testimony." (Emphasis added.)

In this case, Kinard was never asked about his statement to Weirauch identifying Richard as the man wheeled by on a stretcher. The State asked Kinard whether he saw the face of the man who snatched his chain, what his response would be if he were asked to identify that man in court, and a number of questions about Kinard's prior descriptions of the other man who accompanied the one who grabbed his chain. Kinard's reply that he did not get a good look at his attacker because the events happened quickly and that he would say "No" to identifying the man in court are arguably inconsistent with telling Weirauch that he saw his attacker wheeled by on a stretcher in the hospital soon after the attempted robbery.

If we accept that Kinard's trial testimony was inconsistent with his statements to Weirauch, the out-of-court statements still fail to meet the requirements for admission under NRS 51.035(2)(a) and NRS 50.135(2)(b) because the State never asked Kinard about his identification of Richard in the hospital; therefore, he was never "subject to cross-examination *concerning the statement*" as required by NRS 51.035(2) (emphasis added) or "afforded an opportunity to explain or deny the statement" as required by NRS 50.135(2)(b). Additionally, because the State never asked Kinard about that prior statement, Richard did not have "an opportunity to interrogate [Kinard]" about his out-of-court statement as is required before extrinsic evidence of a prior contradictory statement by a witness can be admitted into evidence. NRS 50.135(2)(b).

Supreme Court
OF
Nevada




(O) 1947A

Therefore, Kinard's alleged identification of Richard in the hospital through Weirauch's testimony was not properly admitted as a prior inconsistent statement pursuant to NRS 50.135(2).

*Prior identification*

The State's second theory of admissibility is that the relevant portion of Weirauch's testimony was properly admitted as an identifying statement pursuant to NRS 51.035(2)(c). NRS 51.035(2)(c) provides that an out-of-court statement is not hearsay if: "[t]he declarant testifies at the trial or hearing and is subject to cross-examination *concerning the statement*, and the statement is . . . [o]ne of identification of a person made soon after perceiving the person." (Emphasis added.) The State argues that "identifying statements made by a declarant who testifies and is subject to cross examination are not hearsay."

The State relies upon *Jones v. State*, 95 Nev. 154, 591 P.2d 263 (1979), to support its assertion that when a "declarant identifies the defendant out-of-court, soon after perceiving the defendant, the identifying statement may be admitted as an exception to hearsay." That reliance on *Jones* is misplaced, however, because there, this court referenced the same statute and affirmed the admission of a prior identification when "[t]he declarant testified at trial, and was subject to cross-examination *concerning the statement*." *Id.* at 156, 591 P.2d at 264 (emphasis added). The State recognizes that in order for a prior statement of identification to be admissible, the declarant must have been subject to cross-examination, as Kinard was, but ignores that the declarant must be subject to cross-examination *concerning the relevant statement*, which Kinard was not.

The State could have asked Kinard if he told Weirauch that he had seen his attacker in the hospital; the State could have asked if he had identified Richard as the man who had grabbed his chain. Had they done

Supreme Court
OF
Nevada

(O) 1947A

11

so, and received a negative response, then the State could have permissibly presented Weirauch's account of the identification. Since the State did not ask Kinard about that prior identification, Kinard was not subject to cross-examination about the statement. Therefore, it was not admissible pursuant to NRS 51.035(2)(c).

Based on the foregoing, we conclude that the district court abused its discretion by admitting Weirauch's testimony about Kinard's hearsay statement identifying Richard as the man who grabbed his chain. The statement was not properly admitted either as a prior inconsistent statement or as a prior identification. *See Crowley*, 120 Nev. at 34, 83 P.3d at 286 ("An appellate court should not disturb the trial court's ruling absent a clear abuse of that discretion." (internal quotations marks omitted)).

Although the district court abused its discretion, we conclude that this error was harmless. Hearsay "errors are subject to harmless error analysis." *Franco v. State*, 109 Nev. 1229, 1237, 866 P.2d 247, 252 (1993). Because Richard identified himself as the man who grabbed Kinard's chain,[4] the erroneous admission of Kinard's statement attesting to the same was merely duplicative evidence. Therefore, the district court's error was harmless.[5]

---

[4]As discussed below, we deny Richard's claims asserting error in the admission of his statements.

[5]Additionally, Richard argues that the admission of Kinard's description through Weirauch's testimony violated his Sixth Amendment right to confront Kinard regarding the description and identification of Richard. Unlike the statutes discussed above, the plain language of the Sixth Amendment only requires that a defendant have the opportunity to confront the witnesses against him, but it does not explicitly require that the defendant be availed of the opportunity to confront the witness

Supreme Court
OF
Nevada

(O) 1947A

*Richard's inculpatory statements*

Richard argues that the admission of his inculpatory statements to police violated his Fourteenth Amendment rights because the circumstances rendered those statements involuntary. In particular, Richard takes issue with the fact that he made both statements while he was still in the hospital after being shot and in the midst of receiving medical treatment. Richard now appeals the district court's determination that his statements were voluntary and made after he was properly given *Miranda* warnings.

"A confession is inadmissible unless freely and voluntarily given." *Chambers v. State*, 113 Nev. 974, 981, 944 P.2d 805, 809 (1997). "The question of the admissibility of a confession is primarily a factual question addressed to the district court: where that determination is supported by substantial evidence, it should not be disturbed on appeal." *Id.* In order to assess whether a confession was made voluntarily, we consider the totality of the circumstances, including such factors as: "the youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Id.* (internal quotations omitted). Because Richard sought to exclude statements to both Detective Weirauch and Detective Spiotto, we discuss them individually.

---

concerning a prior statement. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). We summarily reject this claim.

Supreme Court
of
Nevada

(O) 1947A

*Richard's statement to Detective Weirauch*

At the time he gave a statement to Detective Weirauch, Richard had recently been shot in the back of his calf, broke his leg, and lost enough blood to completely soil his clothes and leave a bloody trail in his wake. Richard was lying in a hospital gurney in the emergency room when Detective Weirauch arrived, and Weirauch interviewed Richard without speaking to a treating physician about Richard's injuries or learning about his treatment or medication. Richard contends that these circumstances render this interview involuntary and that his statements should not have been admitted. Richard also argues that some of his answers were incoherent and, as an example, he points to the following exchange that occurred after Richard affirmatively answered Weirauch's question whether this was "all over a stolen necklace":

> Q: Somebody stole your necklace or was it a friend's necklace?
>
> A: I got robbed a couple weeks ago.
>
> Q: Did you file a report? Okay, and you thought that was your necklace?
>
> A: Nah, I thought he had some of my jewelry.

Furthermore, Richard would not identify the man he was with, and he argues on appeal that the discussion on that topic indicates that he was not understanding the questions or responding appropriately.

Richard's attempts to rely on the circumstances of his injury and medical treatment to undermine the validity of his *Miranda* waiver and statement to Weirauch are unavailing. We previously affirmed a district court's admission of statements when an appellant argued "that his statements were not voluntarily given in light of the fact that he was questioned for four hours after having been stabbed, that he was not well rested, and that he was intoxicated." *Chambers*, 113 Nev. at 980, 944 P.2d

SUPREME COURT
OF
NEVADA

(O) 1947A

at 809. There, the court considered the totality of the circumstances, including the fact that Chambers was "relatively coherent" and that he appeared "to have had an understanding of what was going on, often talking legalese with police."[6] *Id.* at 982, 944 P.2d at 809-10 (internal quotation marks omitted). Similarly, we have affirmed a district court's admission of a confession made about an hour and a half after the defendant shot himself in the face; the defendant made the statement from a hospital gurney surrounded by police, bleeding, and without any medication. *Wallace v. State*, 84 Nev. 603, 605, 447 P.2d 30, 31 (1968).[7]

Weirauch testified that he read the *Miranda* warning from a card while his audio-recorder was on and that Richard "shook his head" to indicate that he understood his rights, waived them, and was willing to speak with Weirauch. The entire interview lasted a minute and a half to two minutes before the interview had to be cut short to allow medical personnel to treat Richard. Although Richard's answers were not directly responsive to the detective's questions, they do not necessarily indicate that Richard was confused or in an altered state of consciousness. Considering the holdings of *Chambers* and *Wallace*, the circumstances surrounding Richard's statement, including his calm demeanor, support the voluntary nature of his answers. We conclude that substantial evidence supports the district court's determination that Richard received a proper *Miranda*

---

[6]"Chambers' blood alcohol level was 0.27 percent right after questioning, and four hours later it was 0.19 percent and descending." *Id.* at 980, 944 P.2d at 808.

[7]We note that unlike in this case, Wallace signed a written acknowledgment of his rights, read the written form back to the officers, and stated that he understood what he had read. *Id.* at 605, 447 P.2d at 31.

SUPREME COURT
OF
NEVADA

(O) 1947A

15

warning and that his statement to Weirauch was voluntary. Therefore, the district court did not err in denying the motion to suppress Richard's statement to Detective Weirauch.

*Richard's statement to Detective Spiotto*

Detective Spiotto, the lead detective assigned to investigate the shooting at the car wash, spoke with Richard at the hospital on the day after the shooting. Spiotto testified that he advised Richard of his *Miranda* rights, and that Richard acknowledged those rights and agreed to speak with him. Richard argues that the information gathered by Detective Spiotto during his interrogation "was not the product of a rational intellect and a free will and was involuntary." Richard's argument lists the details of that interview in an attempt to demonstrate how Richard's statement was not voluntary.

In sum, Richard argues that all of the circumstances surrounding his statement—the fact that the interview took place at 10:30 p.m., his injuries, his location and previous treatment at the hospital, the need of the medical staff to have sole access to him, and the fact that he had undergone surgery—established that his statement to Detective Spiotto was not voluntary. Richard does not allege that anything within the statement itself indicates that he was making an involuntary statement.

Considering the circumstances surrounding Richard's second custodial statement, there is nothing in the record that would undermine the district court's determination that Richard's statement to Detective Spiotto was voluntary. *See Chambers*, 113 Nev. at 981, 944 P.2d at 809. Because we conclude substantial evidence supports the district court's

 

determination, we affirm the district court's decision to deny Richard's motion to suppress his statement to Detective Spiotto.[8]

## CONCLUSION

We clarify that in order for an out-of-court statement to be excluded from the definition of hearsay as a prior inconsistent statement or as a prior identification, the declarant must have testified and have been subject to cross-examination concerning that out-of-court statement. Although the admission of some of Kinard's prior statements was error, the errors were harmless. We also affirm the district court's admission of Richard's statements to Detectives Weirauch and Spiotto as voluntary statements.

Accordingly, we affirm the judgment of conviction.

_____, J.
Stiglich

We concur:

_____, J.
Cherry

_____, J.
Parraguirre

---

[8]In his opening brief, Richard also challenged the sufficiency of the _Miranda_ warning, but at oral argument, appeared to withdraw this argument. Regardless of that withdrawal, we have considered the validity of the _Miranda_ warning and see no basis to reverse the district court's determination that it was sufficient.