RICKY NOLAN, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 43131

April 20, 2006                                          132 P.3d 564

---

*Goodman Law Firm* and *Ross C. Goodman*, Las Vegas, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether the district court may admit posthypnotic testimony that the witness claims is independent of the hypnotic session. The admissibility of posthypnotic testimony is subject to the procedural safeguards outlined in NRS 48.039(1) if the hypnotic session involved the subject matter of the testimony. We conclude that unverified information provided by posthypnotic testimony is inadmissible under NRS 48.039(2) because a person previously hypnotized to improve his or her recollection cannot reliably determine whether the unverified information is his or her own memory or induced by the hypnotic experience.

The district court tried Nolan in two separate trials resulting in judgments of conviction in the first trial for first-degree kidnapping, sexual assault, sexual assault with substantial bodily harm, robbery, burglary, unauthorized signing of a credit or debit transaction, and attempted unauthorized signing of a credit or debit transaction; and in the second trial for first-degree kidnapping, sexual assault, attempted murder with the use of a deadly weapon, and battery with the use of a deadly weapon with substantial bodily harm.

In this case, we conclude that the district court erred in the admission of posthypnotic testimony because the procedural requirements of NRS 48.039 were not met and the testimony was unreliable. However, because we conclude that the error was harmless and that appellant's remaining assignments of error lack merit, we affirm the convictions for first-degree kidnapping, sexual assault, sexual assault with substantial bodily harm, robbery, burglary,

unauthorized signing of a credit or debit transaction, attempted unauthorized signing of a credit or debit transaction, and attempted murder with the use of a deadly weapon. Further, since the State concedes that the doctrine of merger precludes a conviction for both battery with the use of a deadly weapon and attempted murder with the use of a deadly weapon, we reverse the conviction for battery with the use of a deadly weapon.

## FACTS

Appellant Ricky Nolan was charged with 24 counts of various crimes arising from interactions with two women on separate occasions. The district court granted Nolan's motion to sever the counts into two trials.

At the first trial, Nolan was tried on multiple counts arising from his alleged sexual assault of victim Lynda Weishaar and his subsequent unauthorized use of her credit card. Trial testimony indicated that in October 2002, Weishaar and Nolan arrived separately at a local pub where they engaged in conversation. Weishaar, who had taken an antidepressant and a painkiller earlier that day, drank alcohol for several hours at the bar. Although they left the pub around the same time, they were not seen leaving together. Thereafter, Weishaar was sexually assaulted in a Las Vegas apartment complex.

After the assault, Weishaar was found on a street near the exit of the apartment complex. The woman who found her testified Weishaar could not remember her own name. The treating nurse at the hospital stated that Weishaar's memory was limited and "sketchy," and that Weishaar did not know what had happened to her. The treating physician testified that Weishaar had no recollection of the events that had occurred. Moreover, Weishaar told the investigating detective that the events of the night were like a "fuzzy dream" and everything was a "blur."

Prior to the preliminary hearing, Weishaar underwent hypnosis to assist her recall of the events. But Weishaar testified at the preliminary hearing that she had little recollection of the sexual assault. However, at trial, she was permitted to testify in more detail about the assault because she claimed she had some memories independent of the hypnotic session. The district court limited Weishaar's testimony to those memories that she maintained she recalled before undergoing hypnosis. Weishaar testified she had two clear memories of the assault before she underwent hypnosis; the first was lying on a soft mattress while having Nolan over her and forcing her to have intercourse, and the second was lying on her stomach while being sodomized by a person that had the same voice as Nolan.

The jury found Nolan guilty in the first trial of first-degree kidnapping, sexual assault, sexual assault with substantial bodily harm, robbery, burglary, unauthorized signing of a credit or debit transaction, and attempted unauthorized signing of a credit or debit transaction.

In the second trial, Nolan was tried on multiple counts arising from his alleged sexual assault of victim Cynthia Dyson at his apartment and a fight with Dyson's son after the alleged assault. Dyson testified that in September 2002, Nolan approached her on the street and expressed an interest in her church. Dyson offered to walk with Nolan to his home and provide him with information concerning the church. According to Dyson, once the two arrived at Nolan's apartment, Nolan pulled Dyson inside and sexually assaulted her.

After Nolan released her, Dyson went immediately to the apartment she shared with her son and informed him about the incident. Dyson's son located Nolan and the two individuals engaged in a fight outside Nolan's apartment. During the altercation, Nolan repeatedly struck Dyson's son with a large rock. Dyson's son was taken to the hospital and received treatment for a laceration to his head and a broken nose.

At the close of trial, the jury found Nolan guilty of first-degree kidnapping, sexual assault, attempted murder with the use of a deadly weapon, and battery with the use of a deadly weapon with substantial bodily harm. This appeal concerns both trials.

## DISCUSSION

### First trial issues

Nolan contends the district court erred in the first trial when it allowed the victim to testify after a hypnotic session, violated his confrontation rights under the Sixth Amendment, permitted irrelevant testimony, permitted a juror to question a witness, and provided improper jury instructions for the kidnapping charge. Additionally, Nolan maintains that the evidence was insufficient to sustain his convictions.

#### Posthypnotic testimony under NRS 48.039

Nolan contends that, by allowing victim Weishaar to testify about the assault after she was the subject of hypnosis and failing to admonish the jury about the reliability of posthypnotic testimony, the district court failed to follow the procedural requirements of NRS 48.039 governing the admissibility of posthypnotic testimony.

The decision to admit evidence is "within the district court's sound discretion," and this court will "respect the lower court's determination" if it is not " 'manifestly wrong.' "[1]

NRS 48.039 provides procedural safeguards that must be followed before presenting testimony from a witness who has previously undergone hypnosis to recall events that are the subject matter of the testimony, and states as applicable here:

1. The testimony of a witness who previously has undergone hypnosis to recall events that are the subject matter of the testimony is admissible if:

. . . .

(c) Before the hypnosis was induced, a written record was made that includes, without limitation:

(1) A description of the subject matter of the hypnosis as provided by the witness; and

(2) The information that was provided to the hypnotist concerning the subject matter of the hypnosis;

(d) The entire session at which the hypnosis was induced was electronically recorded by audio or video recording equipment, including, without limitation, any interview that was conducted before or after the hypnosis was induced;

(e) The recording of the entire session at which the hypnosis was induced was made available by the party who produced the witness to each party involved in the case, pursuant to the discovery procedures as provided in NRS 174.235 to 174.295, inclusive, the Nevada Rules of Civil Procedure or the Justice Court Rules of Civil Procedure, depending upon the nature of the proceedings; and

(f) The hypnotist and the witness were the only persons present during the session of hypnosis unless the hypnotist or a law enforcement officer who is investigating the criminal case, if any, determined that it was necessary for one of the following persons to be present during the session:

(1) A parent or guardian of a witness who is a minor; or

(2) An artist employed by a law enforcement agency.

2. The court, on its own motion or that of a party, may exclude the testimony of a person who previously has undergone hypnosis to recall events which are the subject matter of the testimony if the court determines that such testimony is unreliable or is otherwise inadmissible.

---

[1]*Petrocelli v. State*, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985) (quoting *Brown v. State*, 81 Nev. 397, 400, 404 P.2d 428, 430 (1965)).

3. The court shall instruct the jury to exercise caution when considering the reliability of the testimony of a person who previously has undergone hypnosis to recall events that are the subject matter of the testimony.

"Where the language of a statute is plain and unambiguous, . . . there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself."[2] NRS 48.039(1) provides that it applies to "[t]he testimony of a witness who previously has undergone hypnosis to recall events that are the subject matter of the testimony." This statute is plain and unambiguous. Since Weishaar underwent hypnosis to recall what happened the night of the assault, and because that was the subject of her testimony, NRS 48.039 applies.

While NRS 48.039 implicitly provides that documented recollections made prior to a hypnotic session are admissible, this statute applies to memory refreshed through hypnosis. The statute addresses reliability concerns previously addressed by the California Supreme Court in *People v. Shirley*:

> [I]t is the consensus of informed scientific opinion today that in no case can a person previously hypnotized to improve his recollection reliably determine whether any unverified item of his testimony originates in his own memory or is instead a confusion or confabulation induced by the hypnotic experience. It would fly in the face of that consensus to allow a witness to be the judge of which portions of his testimony were actually produced by hypnosis.[3]

As stated in *Shirley*, neither a victim nor a judge is qualified to determine which memories are or are not recalled independent of hypnosis.[4] *Shirley* and NRS 48.039 recognize that a person previously hypnotized to improve his or her recollection cannot reliably determine whether any unverified information is his or her own memory or induced by the posthypnotic experience.

The district court limited Weishaar's testimony to the two memories she claimed she could recall before she underwent hypnosis. Weishaar testified that, independent of the hypnosis, she remembered lying on her back while Nolan forced sexual intercourse on

---

[2]*State v. Jepsen*, 46 Nev. 193, 196, 209 P. 501, 502 (1922).

[3]*People v. Shirley*, 723 P.2d 1354, 1385 (Cal. 1982).

[4]*Id*. at 1385.

her and being sodomized while lying on her stomach. Notwithstanding her attempt to recall during the preliminary hearing, Weishaar was asked if she could remember anything other than the sodomy and she replied ''No.'' At trial, she was asked whether she remembered anything else, and Weishaar replied she could recall the other events. She then described, among other things, how Nolan forced sexual intercourse on her. Weishaar presumably followed the directions of the district court but still testified as to a memory she previously stated she did not have before her hypnotic session.[5] Given the circumstances surrounding the crime and the undeniable psychological effect of the assault, Weishaar's difficulty differentiating between which memories were actually produced by hypnosis and which were not is understandable. Here, all of her recollections regarding the sexual assault followed hypnosis.

Thus, because the State and the district court failed to follow the procedural safeguards provided in NRS 48.039 and Weishaar's posthypnotic testimony was unreliable, it was manifest error for the district court to admit such testimony.

### Harmless error

Although the admission of Weishaar's posthypnotic testimony violated NRS 48.039, we conclude the district court's error was harmless because it is clear beyond a reasonable doubt that the error did not contribute to the verdict.[6]

We conclude beyond a reasonable doubt that the jury would have found Nolan guilty even without Weishaar's testimony and that the jury's verdict is not attributable to the erroneous admission of that testimony.[7] Employees at the pub witnessed Weishaar and Nolan talking at the bar and later leaving around the same time. Weishaar admitted she had been drinking and had taken an antidepressant and a painkiller. Weishaar was found injured outside Nolan's apartment late at night. Her injuries were consistent with a sexual assault. Nolan was later seen using Weishaar's stolen credit card to purchase several pairs of shoes on separate occasions. He also attempted to use the same card to pay for a dinner. Further, Nolan admitted to having sexual intercourse with Weishaar and even suggested an acquaintance possibly caused the severe injuries Weishaar suffered. Based upon this evidence and the extensive tes-

---

[5]This is further evidenced by the testimony of individuals who aided Weishaar on the night in question. The woman who first found her stated Weishaar could not remember her name. The treating nurse said Weishaar's details of the crime were ''sketchy,'' and the treating physician noted she did not have any recollection of the assault.

[6]*Chapman v. California*, 386 U.S. 18, 24 (1967).

[7]*See id.*

timony presented at trial, it is clear beyond a reasonable doubt that the error did not contribute to the verdict. Thus, even though the district court erred in admitting Weishaar's testimony, the error was harmless beyond a reasonable doubt.

### Confrontation Clause violation

Nolan argues that allowing a detective to read portions of a statement Weishaar gave violated his confrontation rights under the Sixth Amendment. For a Confrontation Clause violation to occur, a witness must make a testimonial statement.[8] The witness who made the testimonial statement must then be unavailable at trial and the defendant must have been deprived of an opportunity to cross-examine that witness on that statement.[9] While the statements Weishaar made to the detective may have been testimonial, Weishaar was available at trial and was subject to cross-examination by Nolan. Although her memory was severely compromised, Nolan could cross-examine her about her lack of memory. Thus, Nolan's Sixth Amendment right to confront Weishaar was not violated.

### Juror questioning of a witness

Nolan alleges that the spontaneous outburst and questioning by a juror during trial was prejudicial and warrants a new trial. However, Nolan failed to preserve this issue for appeal by failing to object to the juror questioning at trial when it occurred.[10] Consequently, this court will not review this issue on appeal unless the error was plain and affected the defendant's substantial rights.[11] To show that an error affected a defendant's substantial rights, the defendant must establish the error was prejudicial.[12]

During cross-examination of the emergency medical technician who found Weishaar in the street, a juror interrupted the witness and asked how far away from the curb Weishaar's body was found. When the witness stated the body was approximately 8 feet from the curb, the juror then stated, ''[Weishaar] only took two steps.'' Later, the juror remarked during witness testimony, ''[Weishaar] had to have more than a running start.''

---

[8]*Crawford v. Washington*, 541 U.S. 36, 68 (2004).

[9]*Id.*

[10]*Rippo v. State*, 113 Nev. 1239, 1259, 946 P.2d 1017, 1030 (1997) (stating that failure to object during trial precludes appellate review of the issue).

[11]*Gallego v. State*, 117 Nev. 348, 365, 23 P.3d 227, 239 (2001); NRS 178.602.

[12]*Gallego*, 117 Nev. at 365, 23 P.3d at 239.

Jurors are allowed to ask witnesses questions; however, there are strict guidelines that must be followed to prevent prejudicial error. In *Allred v. State*, we held that a juror question must be submitted in writing, the question must be reviewed for admissibility, counsel must be provided an opportunity to object to the question, and an admonishment must be given to the jury that they should refrain from putting undue weight on the answer to juror questions.[13] Unlike the scenario in *Allred*, in which this court found harmless error because the district court complied with most of the juror-questioning procedures,[14] none of the *Allred* requirements could have been met here because the juror's comments were spontaneous. This said, the district court committed plain error when it failed to admonish the jury as required.

However, this error was not prejudicial and did not affect Nolan's substantial rights. Weishaar suffered serious bodily injuries that clearly were not related to a fall from the curb, including a laceration in her vagina and bruising around her anus.

## Second trial issues

Nolan assigns as error in the second trial that the police failed to preserve evidence, that the district court gave an improper jury instruction on kidnapping, that there was insufficient evidence to support his convictions, and that battery with the use of a deadly weapon with substantial bodily harm should be merged with attempted murder with the use of a deadly weapon.

### Preservation of evidence

Nolan contends that the investigating police officers acted in bad faith. Specifically, he alleges that the officers should have recovered DNA swabs from his groin along with the rock he allegedly used to beat Dyson's son because both pieces of evidence would prove favorable to his defense.

This court utilizes a two-part test when a defendant seeks to dismiss charges based on the State's failure to gather evidence.[15] "The first part requires the defense to show that the evidence was 'material,' meaning that there is a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different."[16] "If the evidence was mate-

---

[13]120 Nev. 410, 416, 92 P.3d 1246, 1251 (2004).

[14]*Id.* at 417, 92 P.3d at 1251.

[15]*Daniels v. State*, 114 Nev. 261, 267, 956 P.2d 111, 115 (1998).

[16]*Id.*

rial, then the court must determine whether the failure to gather evidence was the result of mere negligence, gross negligence, or a bad faith attempt to prejudice the defendant's case."[17]

Nolan argues that the DNA swab was material because had the police taken a swab of his genital area, the result of the proceedings would have been different. More specifically, Nolan argues that Dyson did not testify that she performed oral sex upon him. Had a DNA swab found DNA from Dyson's saliva, it would have discredited her testimony regarding her lack of consent. We disagree.

There is no reasonable probability that had evidence of the presence of Dyson's saliva been available to Nolan, the proceedings would have been different. The presence of Dyson's saliva in Nolan's genital area would not prove whether the contact was forced or consensual, only that there was in fact contact. Because a DNA swab of Nolan's genital area is not material, the inquiry ends here. Thus, the police officers' failure to gather the DNA swab as evidence does not result in reversible error.

Nolan also argues that the rock he allegedly used in the fight with Dyson's son was material and should have been collected. Nolan argues that witnesses differed as to whether he used a rock, and he believes these conflicting accounts show that the rock may have been small or there may not have been a rock at all. Without the rock, Nolan claims it is reasonably probable that he may not have been convicted of attempted murder, and especially attempted murder with the use of a deadly weapon. Again, we disagree.

First, Nolan was free to argue at trial that the evidence failed to show that he used the rock. Second, had the police gathered the rock, this evidence would have been inculpatory, not exculpatory. Put differently, had the rock been gathered by the police and admitted at trial, it is not reasonably probable that Nolan would have been acquitted of the attempted murder with the use of a deadly weapon charge. Because the rock was not critical to any issue in the case, the police officer's failure to gather the rock as evidence does not compel reversal.

*Doctrine of merger*

Nolan contends that his conviction for battery with the use of a deadly weapon with substantial bodily harm should be merged with his conviction for attempted murder with the use of a deadly

---

[17]*Id.*

weapon. The State concedes. Accordingly, we vacate Nolan's conviction for battery with the use of a deadly weapon with substantial bodily harm.

## Improper jury instructions in both trials

Nolan alleges that the district court failed to give a proper jury instruction in either trial for the kidnapping charge. Specifically, Nolan contends the instruction was misleading and confused the jury regarding the movement of the victim that must occur to support a conviction of both sexual assault and kidnapping.

"The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error."[18] " 'An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.' "[19]

We perceive no abuse of discretion or judicial error. Nolan specifically focuses on the possibility that because of the movement required to commit a sexual assault, every sexual assault would also include a kidnapping. However, this concern fails to recognize that the district court gave an additional instruction requiring the jury to find beyond a reasonable doubt either: (1) that the movement of the victim was not incidental to the sexual assault and that the movement of the victim substantially increased the risk of harm to the victim over and above that necessarily present in the sexual assault; or (2) that the victim was restrained and such restraint increased the risk of harm to the victim. Thus, the requirements necessary to find Nolan guilty of both kidnapping and sexual assault were provided in the district court's instructions. We recently approved such an instruction for dual criminality.[20] Therefore, the district court did not abuse its discretion in giving the instructions for kidnapping.

## Sufficiency of the evidence in both trials

Nolan also contends that once all of the improper evidence is stricken, there is insufficient evidence to sustain his convictions. This contention is without merit.

---

[18]*Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005).

[19]*Id.* (quoting *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001)).

[20]*Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006).

"The standard of review [when analyzing the sufficiency of evidence] in a criminal case is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[21] Additionally, "it is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses."[22]

After reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of Nolan's crimes against Weishaar beyond a reasonable doubt. Bartenders testified that they saw Nolan and Weishaar together the evening of the alleged crime and that they left the bar around the same time. Weishaar was found by an off-duty EMT, after she suffered extensive injuries, including a vaginal laceration, anal bruising, substantial blood loss, and facial bruising. Weishaar also explained to a detective what occurred to her that night. While at the hospital, Weishaar realized her ATM card was missing, and Nolan was found using her card to purchase several pairs of shoes. Nolan admitted to having sexual relations with Weishaar but denied sexually assaulting her. Although Nolan argued that another individual assaulted Weishaar, the evidence points to Nolan. From that evidence, a jury could have found the essential elements of the crimes committed against Weishaar beyond a reasonable doubt.

Likewise, after reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of Nolan's crimes against Dyson and her son beyond a reasonable doubt. First, Dyson testified as to all the events that occurred with Nolan.[23] While no physical indications of forced sexual penetration were found, the examining nurse stated trauma is not always present and Dyson's blood was found in Nolan's apartment. Second, Dyson's son engaged in an altercation with Nolan after throwing rocks at his window, Dyson and her daugh-

---

[21]*McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[22]*Id.*

[23]*Gaxiola v. State*, 121 Nev. 638, 648, 119 P.3d 1225, 1232 (2005) ("This court has repeatedly stated that the uncorroborated testimony of a victim, without more, is sufficient to uphold a rape conviction.").

ter testified that Nolan used a rock to hit her son in the head, and Dyson's son suffered a broken nose and head injuries requiring staples. Viewed in the light most favorable to the prosecution, the jury could have found the essential elements of the crimes committed against Dyson and her son beyond a reasonable doubt.

Although conflicting testimony was given, the jury has the prerogative of weighing the credibility of the witnesses. In this case, the jury rejected Nolan's version of events, and we will not disturb the jury's determination that the witnesses against Nolan were more credible.

## CONCLUSION

We affirm Nolan's convictions in the first trial for first-degree kidnapping, sexual assault, sexual assault with substantial bodily harm, robbery, burglary, unauthorized signing of a credit or debit transaction, and attempted unauthorized signing of a credit or debit transaction. Further, we affirm Nolan's convictions for first-degree kidnapping, sexual assault, and attempted murder with the use of a deadly weapon in the second trial, but we reverse Nolan's conviction for battery with the use of a deadly weapon with substantial bodily harm. We therefore remand this matter to the district court for proceedings consistent with this opinion.

MAUPIN and GIBBONS, JJ., concur.