## 132 Nev., Advance Opinion 44
### IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ANTHONY CASTANEDA,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 64515<br><br>**FILED**<br><br>JUN 16 2016<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |



Appeal from a judgment of conviction, pursuant to jury verdict, of 15 counts of possession of child pornography. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

*Affirmed in part, vacated in part, and remanded.*

Philip J. Kohn, Public Defender, and P. David Westbrook and Audrey M. Conway, Deputy Public Defenders, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Alexander G. Chen, Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

Nevada law makes it a felony to possess child pornography. The question before the court is whether appellant Anthony Castaneda committed 15 felonies or one when he simultaneously possessed 15 digital

images of children engaged in sexual conduct. We hold that, in the circumstances of this case, he committed a single, category B felony. Castaneda's remaining claims of error fail. We therefore affirm in part, vacate in part, and remand.

I.

The charges against Castaneda originated in a report by a former housemate of his to the Las Vegas Metropolitan Police Department (LVMPD). The former housemate reported that, after moving out of Castaneda's house, she and her boyfriend found mixed in with their belongings a USB flash drive similar to one Castaneda customarily kept on his key chain. When they opened the flash drive, they discovered that it held copies of Castaneda's driver's license, birth certificate, Social Security card and military records, as well as a file of pornographic images, some depicting children.

LVMPD obtained a search warrant to view the contents of the flash drive. On the flash drive, in addition to Castaneda's identification, detectives found a subfolder named "girl pics." This subfolder contained pornographic images, including several that an FBI database established as known images of child pornography downloadable from the World Wide Web. Based on this evidence, detectives obtained a search warrant for Castaneda's home and home computers. The home computers, a desktop and a laptop, contained each of the child pornography images found on the flash drive and several additional known images of child pornography as well, for a total of 15 separate depictions, with most being found on both the desktop and the laptop. Castaneda was interviewed by a detective while the search was underway. After the interview concluded, he came into the room where another detective had one of the illegal images open

on the computer. Reportedly, Castaneda saw what was on the screen and said, "Those are kids, I'm sorry."

The State charged Castaneda with 15 counts of knowingly and willfully possessing 15 image files depicting sexual conduct of a child in violation of NRS 200.730. Before trial, the State and Castaneda stipulated not to publish the charged images in open court but, rather, to put copies of them into evidence in a sealed envelope for the jury to examine if it so chose. They further stipulated, quoting language from NRS 200.730, that each of the 15 charged images depicted a child "under the age of 16 years as the subject of a sexual portrayal or engaging in, or simulating, or assisting others to engage in or simulate, sexual conduct."

After a six-day trial, the jury convicted Castaneda on all 15 counts. The district court judge sentenced Castaneda to a minimum of 28 months and maximum of 72 months on each count, the sentences to run concurrently. The district court suspended the sentences and placed Castaneda on probation for a 5-year term. Castaneda appeals.

II.

Castaneda argues that 14 of his 15 convictions for possessing child pornography must be vacated because NRS 200.730 penalizes possession, and the State proved only "a singular act of digital possession of items seized on the day the police took the computers into police custody."[1] Castaneda casts his argument in constitutional terms, citing the protection against "multiple punishments for the same offense"

---

[1]The State does not question that Castaneda's post-trial motion to vacate the jury's verdict as to counts 2-15 adequately preserved this issue.

afforded by the double jeopardy clauses of the United States and Nevada Constitutions. U.S. Const. amend. V; Nev. Const. art. 1, § 8. But what Castaneda's challenge asks us to do is to read NRS 200.730, the statute under which he was charged, and determine the unit of prosecution it allows in this case, specifically, whether Castaneda's simultaneous possession of 15 digital images of child pornography constitutes one crime or 15 crimes. "While often discussed along with double jeopardy," *Wilson v. State*, 121 Nev. 345, 355, 114 P.3d 285, 292 (2005), "determining the appropriate unit of prosecution presents an issue of statutory interpretation and substantive law." *Jackson v. State*, 128 Nev. 598, 612, 291 P.3d 1274, 1278 (2012) (internal quotations omitted); *see* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1817-18 (1997) (noting that "it is up to the legislature to decide whether planting and exploding a bomb should be one crime or two (because the bomb was first planted, then exploded) or fifty (because fifty people died) or 500 (because 450 more were at risk) or 1,000,500 (because the bomb also destroyed one million dollars of property and each dollar of bomb damage is defined as a separate offense"); on such questions, the double jeopardy clause is "wholly agnostic" and "imposes no limits on how the legislature may carve up conduct into discrete legal offense units"). As with other questions of statutory interpretation, our review is de novo, *Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004), and begins with the statutory text, *Wilson*, 121 Nev. at 356, 114 P.3d at 293.

A.

Castaneda was charged with violating NRS 200.730, which reads in full as follows:

SUPREME COURT
OF
NEVADA

(O) 1947A

4

*A person who knowingly and willfully has in his or her possession* for any purpose *any film, photograph or other visual presentation* depicting a person under the age of 16 years as the subject of a sexual portrayal or engaging in or simulating, or assisting others to engage in or simulate, sexual conduct:

> 1. For the first offense, *is guilty of a category B felony* and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000.

> 2. For any subsequent offense, is guilty of a category A felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of life with the possibility of parole, and may be further punished by a fine of not more than $5,000.

(Emphases added.)

To the State, NRS 200.730 is plain and unambiguous: It authorizes a separate conviction for each pornographic image possessed. Emphasizing the word "any" in the phrase "*any* film, photograph or other visual presentation," the State maintains that NRS 200.730 makes it a crime to possess even a single photograph depicting child pornography. From this it follows, the State submits, that each such photograph or image a person possesses constitutes a separate crime.

The State's explication of NRS 200.730's text is flawed. To be sure, the statute authorizes prosecution based on possession of a single image depicting child pornography. But this does not mean that each additional image possessed necessarily gives rise to a separate prosecutable offense.

A number of disparate criminal statutes use "any" as NRS 200.730 does: to catalog the objects of the prohibition the statute states. *See United States v. Kinsley*, 518 F.2d 665, 667-68 (8th Cir. 1975) (providing examples of such statutes and the cases construing them, including *Bell v. United States*, 349 U.S. 81 (1955), in which the Supreme Court famously held that the simultaneous transportation of two women across state lines constituted one, not two, violations of the Mann Act, which was ambiguous in that it made it a crime to knowingly transport "any woman or girl" across state lines for immoral purposes without defining the unit of prosecution). The word "'any' has multiple, conflicting definitions, including (1) one; (2) one, some, or all regardless of quantity; (3) great, unmeasured, or unlimited in amount; (4) one or more; and (5) all." *State v. Sutherby*, 204 P.3d 916, 920 (Wash. 2009) (citing *Webster's Third New International Dictionary* 97 (1976)). For this reason, courts interpreting forms of criminal statutes similar to NRS 200.730 have rejected the proposition that the use of the word "any" to introduce a list of prohibited objects automatically authorizes a per-object unit of prosecution. In fact, contrary to the reading the State advocates in this case, "the word 'any' has 'typically been found ambiguous in connection with the allowable unit of prosecution,' for it contemplates the plural, rather than specifying the singular." *United States v. Coiro*, 922 F.2d 1008, 1014 (2d Cir. 1991) (quoting *Kinsley*, 518 F.2d at 668).

> Significantly, in many of the cases in which the courts have found a *Bell*-type ambiguity [as to the proper unit of prosecution], the object of the offense has been prefaced by the word "any." Seemingly this is because "any" may be said to fully encompass (*i.e.*, not necessarily exclude any part of) plural activity, and thus fails to

SUPREME COURT OF NEVADA

(O) 1947A

unambiguously define the unit of prosecution in singular terms.

*Kinsley*, 518 F.2d at 667.

## B.

Since the text of NRS 200.730 does not unambiguously establish whether Castaneda was properly prosecuted on a per-image basis, we turn to other legitimate tools of statutory interpretation, including related statutes, relevant legislative history, and prior judicial interpretations of related or comparable statutes by this or other courts. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 298-99 (2012). Only then, if "a reasonable doubt persists" after "all the legitimate tools of interpretation have been applied," do we reach the rule of lenity urged on us by Castaneda, which teaches that "[a]mbiguity in a statute defining a crime or imposing a penalty should be resolved in a defendant's favor." *Id.* at 299 (quotation and footnotes omitted); *see State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1227 (2011).

## 1.

NRS 200.730 is one of a series of statutes, NRS 200.700 through NRS 200.760, codified under the heading "Pornography Involving Minors." The lead definitional statute, NRS 200.700, defines "sexual conduct" and "sexual portrayal," both phrases that are used in NRS 200.730, but it does not define "film, photograph or other visual presentation," the objects whose possession NRS 200.730 prohibits. The terms "film," "photograph," and "other visual presentation" appear, though, in NRS 200.700(1), which defines "[p]erformance," the use of a minor in which is made criminal by NRS 200.710 and NRS 200.720, to

mean "any play, *film, photograph*, computer-generated image, electronic representation, dance *or other visual presentation*." (emphases added).[2]

The legislative history of NRS 200.730 sheds little light on the unit of prosecution it authorizes. Enacted in 1983, NRS 200.730's prohibition against possession of child pornography was added almost as an afterthought to A.B. 189, which proposed the statutes criminalizing the production and distribution of child pornography that became NRS 200.700 through NRS 200.760. Hearing on A.B. 189 Before the Senate Judiciary Comm., 62d Leg. (Nev., March 31, 1983). As originally adopted, NRS 200.730 made the possession of child pornography a misdemeanor. *See* 1983 Nev. Stat., ch. 337, § 4, at 814. The Legislature has since amended NRS 200.730 several times, but each amendment only increased the penalties for possession without providing insight into the unit of prosecution. 1985 Nev. Stat., ch. 459, § 1, at 1412-13; 1987 Nev. Stat., ch. 369, § 1, at 846; 1995 Nev. Stat., ch. 443, § 77, at 1196; 2005 Nev. Stat, ch. 507, § 29, at 2876. For the near quarter century NRS 200.730 has been on the books, its core prohibition—"possession" of "any film, photograph or other visual presentation" of a minor engaged in sex—has not changed, despite the advent of the Internet and the explosion in the market for

---

[2]As originally enacted, NRS 200.700(1) more closely tracked NRS 200.730, in that it defined "performance" as to include "any play, film, photograph, dance or other visual presentation." *See* 1983 Nev. Stat., ch. 337, § 2, at 814. The 1995 Legislature amended NRS 200.700(1) to add "computer-generated image" and "electronic representation" to its definition of performance, *see* 1995 Nev. Stat., ch. 389, § 4, at 950, but it did not make parallel conforming amendments to NRS 200.730.

Supreme Court
of
Nevada

(O) 1947A

8

child pornography that advanced digital technology has brought.[3] While digital images downloaded from the Internet no doubt qualify as a type of "film, photograph or other visual presentation," neither the text of NRS 200.730 nor its legislative history answers the unit-of-prosecution question this case poses.

### 2.

In *Wilson v. State*, 121 Nev. 345, 114 P.3d 285 (2005), we considered the unit of prosecution authorized by NRS 200.710, which punishes as a category A felony the use of a minor in a "performance" involving the minor in "sexual conduct" or "sexual portrayal." Wilson took four Polaroid photographs of a child he persuaded to undress and sexually pose for him. *Id.* at 357, 114 P.3d at 293. For this he was charged with and convicted of four counts of violating NRS 200.710, penalizing the use of a minor in a "performance." *Id.* at 355, 114 P.3d at 292.

---

[3]Richard Wortley & Stephen Smallbone, U.S. Dep't of Justice, *Child Pornography on the Internet* 12 (2006); *see Child Pornography*, U.S. Dep't of Justice, https://www.justice.gov/criminal-ceos/child-pornography (last updated June 3, 2015) ("By the mid-1980's, the trafficking of child pornography within the United States was almost completely eradicated through a series of successful campaigns waged by law enforcement. . . . Unfortunately, the child pornography market exploded in the advent of the Internet and advanced digital technology."); *see also Overview and History of the Violent Crimes Against Children Program*, FBI, https://www.fbi.gov/about-us/investigate/vc_majorthefts/cac/overview-and-history (last visited June 6, 2016) ("More online incidents of these crimes are being identified for investigation than ever before. Between fiscal years 1996 and 2007, the number of cases opened throughout the FBI catapulted from 113 to 2,443.").

On appeal, Wilson contended that NRS 200.710 outlawed the use of a child in a performance and that, because the child engaged in a single performance during which Wilson took four separate pictures, only one violation of NRS 200.710 had occurred. *Id.* at 357, 114 P.3d at 293. The State countered that, because NRS 200.700(1) defines "performance" to include "any . . . film, photograph, . . . or other visual presentation," it had proven four "performances" and, so, four violations of NRS 200.710. *Id.* We reversed three of the four counts of violating NRS 200.710 that Wilson had been convicted of. *Id.* at 358, 114 P.3d at 294. "[N]otwithstanding th[e] broad definition [of performance], it is the use of a child in a sexual performance that is prohibited under NRS 200.710, and that performance can be of any type and documented in any manner." *Id.* at 357, 114 P.3d at 294.

> The purpose of Nevada's child pornography statutes is to protect children from the harms of sexual exploitation and prevent the distribution of child pornography. As such, the intent of the Legislature in passing NRS 200.700 to 200.760, inclusive, was to criminalize the use of children in the production of child pornography, not to punish a defendant for multiple counts of production dictated by the number of images taken of one child, on one day, all at the same time. *If the Legislature intended this statute to punish a party for every individual photograph produced of a sexual performance, it certainly could have effectuated that intent in the statute.* Therefore, we conclude that the facts of this case demonstrate a single violation of NRS 200.710, not multiple acts in violation of the law.

*Id.* at 358, 114 P.3d at 294 (footnote omitted; emphasis added); *see Casteel v. State*, 122 Nev. 356, 362, 131 P.3d 1, 5 (2006) (upholding multiple convictions of violating NRS 200.710 where the minor was photographed

SUPREME COURT
OF
NEVADA

(O) 1947A

in separate sexual episodes but reversing all but one of the convictions where the photographs were taken during a single episode).

The State argues that *Wilson* requires affirmance of Castaneda's per-image-based convictions. In addition to his convictions for violating NRS 200.710, Wilson was, like Castaneda, charged with and convicted of four counts of possession of child pornography under NRS 200.730 based on the four Polaroid pictures he took during the child's performance. While the State is correct that this court affirmed Wilson's convictions under NRS 200.730, Wilson did not raise a unit of prosecution challenge to his possession-of-child-pornography charges, as Castaneda does here. We decline to read into *Wilson* a holding this court was not asked to consider and did not make.

### 3.

While *Wilson* does not directly decide the unit of prosecution question this case presents, it does suggest the appropriate approach to take. Much as NRS 200.710 outlaws a pornographic "performance" by a child, which NRS 200.700(1) broadly defines to include "any play, film, photograph, computer-generated image, electronic representation, dance or other visual presentation," NRS 200.730 outlaws "possession" of "any film, photograph or other visual presentation" constituting child pornography. *Wilson* was concerned that counting each photograph as a separate "performance" for purposes of NRS 200.710 would lead, in the case of a moving-picture performance, to thousands of separate offenses, one per each screen comprising the film, a result the court deemed "absurd." *Wilson*, 121 Nev. at 357, 114 P.3d at 294. While NRS 200.730 presents a different question than NRS 200.710, given that it prohibits "possession" of child pornography, not "use" of a minor in a pornographic

SUPREME COURT
OF
NEVAOA

(O) 1947A

11

performance, the number of electronic images downloadable in a single Internet session similarly counsels against the rudimentary, per-image unit of prosecution for which the State advocates absent clear legislative direction to that effect.

Courts elsewhere have divided on the unit of prosecution in possession-of-child-pornography cases involving statutes like NRS 200.730. *Compare People v. Hertzig*, 67 Cal. Rptr. 3d 312, 316 (Ct. App. 2007) (holding that the defendant's possession of a laptop with 30 different child pornographic videos constituted a "solitary act of possessing the proscribed property," and reversing all but one count); *Commonwealth v. Rollins*, 18 N.E.3d 670, 678 (Mass. 2014) (holding that "a defendant's possession of a single cache of one hundred offending photographs in the same place at the same time gives rise to a single unit of prosecution" for illegal possession of child pornography); *State v. Liberty*, 370 S.W.3d 537, 548, 553 (Mo. 2012) (holding child pornography possession statute was ambiguous because "the proscription . . . against possession of '*any* obscene material' . . . reasonably could be interpreted to permit either a single prosecution or multiple prosecutions for a single incidence of possession of eight still photographs of child pornography," and concluding that, in light of its holding of ambiguity, "the rule of lenity *must* be applied and the statute *must* be interpreted favorably for the defendant"); *State v. Olsson*, 324 P.3d 1230, 1231, 1235, 1239 (N.M. 2014) (concluding that "the use of the word 'any' in the statute only compounds the ambiguity," and thus, "because the language is ambiguous and the history and purpose do not offer any further clarity," the rule of lenity applies, allowing only one count of possession of child pornography); *State v. Pickett*, 211 S.W.3d 696, 706 (Tenn. 2007) (holding that where the state failed to establish that the

images of illegal child pornography were downloaded from more than one website at more than one time, the evidence established only one crime), *and Sutherby*, 204 P.3d at 922 ("Given the context of the language used in the child pornography statute, and our repeated construction of 'any' as including 'every' and 'all,' we hold that the proper unit of prosecution under former RCW 9.68A.070 is one count per possession of child pornography, without regard to the number of images comprising such possession or the number of minors depicted in the images possessed."), *with State v. McPherson*, 269 P.3d 1181, 1184-85 (Ariz. Ct. App. 2012) ("[U]nder our own statutes, we can only conclude the legislature intended separate punishments for separate or duplicate images of child pornography, even when those images are acquired at the same time."); *Fink v. State*, 817 A.2d 781, 788 (Del. 2003) (holding that each individual visual depiction of child pornography possessed constituted a separate offense); *Williams v. Commonwealth*, 178 S.W.3d 491, 495 (Ky. 2005) ("The singular form of 'photograph' read in conjunction with the term 'any' clearly indicates that the Legislature intended prosecution for each differing photograph."); *State v. Fussell*, 974 So. 2d 1223, 1235 (La. 2008) ("[W]e hold that the language of [the statute] evidences a legislative intent to allow a separate conviction on a separate count for each child, in each sexual performance in which that child is victimized, that is captured in any photographs, films, videotapes, or other visual reproductions that a defendant intentionally possesses."); *Peterka v. State*, 864 N.W.2d 745, 750, 753-54 (N.D. 2015) (upholding conviction for 119 counts of possession of child pornography found on the defendant's computer); *and Commonwealth v. Davidson*, 938 A.2d 198, 219 (Pa. 2007) (concluding that the word "any" followed by a list of singular objects demonstrated the

SUPREME COURT
OF
NEVADA

(O) 1947A

general assembly's intent to make each image of child pornography a separate crime).

We recognize the policy goals behind tying punishment to the number of child victims depicted in, and thus harmed by, the images possessed. Consistent with the rule of lenity, though, we are obligated to construe statutes that contain ambiguity in the proscribed conduct in the accused's favor. *Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004) ("A court should normally presume that a legislature did not intend multiple punishments for the same offense absent a clear expression of legislative intent to the contrary. Criminal statutes must be strictly construed and resolved in favor of the defendant.") (footnote and internal quotation omitted); *see Liberty*, 370 S.W.3d at 551 ("While we agree with the State that each photograph exploits the minor and adds to the market, it is for the legislature to define what it desires to make the allowable unit of prosecution. The legislature has not made the number of children victimized the basis of separate units of prosecution in section 573.037.") (internal quotations and citations omitted).

Here, the State defends Castaneda's multiple convictions on the basis that police found 15 distinct images depicting child pornography on his home computers. When LVMPD searched Castaneda's home, they found both the laptop and the desktop, which together held all 15 charged images, some of them evident duplicates, in the same room in his home. And though the flash drive came into law enforcement's possession before the search and from a third party, the flash drive contained images that Castaneda copied from or to the laptop and desktop. The State's theory presented in closing was that Castaneda downloaded the images to the laptop, then copied those images to the flash drive and the desktop,

assertions supported by LVMPD detectives' testimony. The State prosecuted the images as a group and did not attempt to show, other than that there were 15 different images, individual distinct crimes of possession. *See, e.g., Pickett,* 211 S.W.3d at 706 (holding that evidence of possessing multiple images of child pornography on a computer constituted one crime because the "State did not otherwise attempt to distinguish the offenses by showing that the crimes were separated by time or location or by otherwise demonstrating that Pickett formed a new intent as to each image"). This case does not require us to decide whether distinct downloads at different times and in different locations would establish separate units of prosecution as some courts have held. *See State v. Roggenbuck,* 387 S.W.3d 376, 381-82 (Mo. 2012) (distinguishing *Liberty,* 370 S.W.3d at 551, on the basis that "the charges and the evidence established only that Liberty possessed multiple images of child pornography at the same time," thus constituting a single offense, and upholding multiple convictions where the acts of acquiring and possessing pornography were separated by time and place); *State v. Sutherby,* 158 P.3d 91, 94 n.4 (Wash. Ct. App. 2007) (holding that the simultaneous possession of pornographic images constituted a single offense but stressing that, "We do not address special circumstances not present here, such as possession in two distinct locations or at two distinct times."), *aff'd,* 204 P.3d 916 (Wash. 2009). As in *Liberty* and *Sutherby,* we hold only that, consistent with their reasoning and the rule of lenity long established in our law, Castaneda's simultaneous possession at one time and place of 15 images depicting child pornography constituted a single violation of NRS 200.730.

 

## III.

Castaneda raises a number of other issues on appeal, which we conclude are either meritless or harmless and, thus, only briefly address. Chief among them is Castaneda's challenge to the sufficiency of the evidence. This challenge rests on Castaneda's charge that the State failed to prove "that it was Castaneda, and not a virus, automated program, or another individual who knowingly and willfully possessed the [pornographic] images." A criminal conviction will survive a sufficiency of the evidence challenge if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Grey v. State*, 124 Nev. 110, 121, 178 P.3d 154, 162 (2008) (quoting *Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006)). Here, although Castaneda elicited testimony that a virus *could* have accessed the files, other testimony established that the downloads were more likely the product of conscious human endeavor. Similarly, while Castaneda's housemates at one time had access to Castaneda's desktop, other evidence indicated that they did not have access to Castaneda's password-protected user account on the desktop or his laptop. The jury also was entitled to consider the fact that the same images appeared on more than one device and that, when he saw that a detective had opened one of the illegal images, Castaneda commented that "Those are kids, I'm sorry." Viewed in the light most favorable to the State, the evidence was sufficient to support the jury's conviction of Castaneda for knowingly and willfully possessing the charged images in violation of NRS 200.730.

 

Castaneda next challenges the district court's refusal to permit him to call a previously unnoticed expert witness, a decision we review for an abuse of discretion. *See Mitchell v. State*, 124 Nev. 807, 819, 192 P.3d 721, 729 (2008). Castaneda asks us to excuse his tardy notice because Detective Ehlers's testimony that the files found in the unallocated space of Castaneda's desktop and laptop had previously been deleted by a user caught him by surprise. But Castaneda's argument misses the facts that Detective Ehlers testified at the preliminary hearing that the recovery of the file remnants "means that it was viewed or was upon that computer at one time and was possibly or probably deleted, or as in this case, it was being downloaded from a website [and] did not completely download," that it was Castaneda, not the State, who elicited the surprise testimony from Detective Ehlers on cross-examination, and that Castaneda was able to develop the points he wanted to make on further cross-examination. Also, Castaneda had already obtained a continuance of the trial to permit him to retain a computer expert, which he did; he simply elected not to notice that expert as a potential witness. The district court did not abuse its discretion in denying his request to call an unnoticed expert witness.

IV.

We hold that the State proved one, not 15, violations of NRS 200.730 but otherwise find no reversible error. We therefore affirm in

part, vacate in part, and remand for entry of an amended judgment of conviction.

_____Pickering_____, J.
Pickering

We concur:

_____Parraguirre_____ C.J.
Parraguirre

_____Hardesty_____, J.
Hardesty

_____Douglas_____, J.
Douglas

_____Cherry_____, J.
Cherry

_____Saitta_____, J.
Saitta

_____Gibbons_____ J.
Gibbons