# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL ALAN LEE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66963

FILED

AUG 10 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder by child abuse and child abuse and neglect with substantial bodily harm. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

Brodie Aschenbrenner was born in December 2008 to Arica Foster, who was his primary caregiver. In October 2010, Arica began dating the appellant, Michael Lee. In February 2011, Arica, Brodie, and Lee all moved into an apartment together. On the morning of Wednesday, June 15, 2011, Arica woke up and found Brodie dead. After his arrest and subsequent trial, a jury found Lee guilty of first-degree murder by child abuse and child abuse and neglect with substantial bodily harm. He was sentenced to serve consecutive prison terms of life without the possibility of parole and 96-240 months.[1] Lee now appeals, arguing (1) the district court abused its discretion in denying his motion for a mistrial because it

---

[1]The parties are familiar with the material facts here, thus, we will not recount them further, except as necessary to reach our disposition.



16-24817

improperly allowed the State to publish autopsy photos for the jury, (2) the State failed to proffer sufficient evidence at trial to support his murder conviction; and (3) the State failed to present sufficient evidence to bind him over for trial at his preliminary hearing. Upon review of the record and the arguments presented, we affirm Lee's judgment of conviction.

*The district court did not abuse its discretion in denying Lee's motion for a mistrial*

Lee argues the district court erred in allowing the jury to see Brodie's autopsy photos during lay witness testimony[2] because their probative value was substantially outweighed by the risk of unfair prejudice. Lee further argues that the photos were so prejudicial that showing them to the jury impaired his due process and fair trial rights, and, as a result, he was entitled to a mistrial. The district court found that the photos' probative value was not substantially outweighed by the risk of unfair prejudice because (1) the timing of Brodie's injuries was crucial to the case, and the photos helped establish that timeline; and (2) the photos were helpful in determining whether Brodie's injuries were accidental or the result of abuse.

A district court may order a mistrial when sufficiently prejudicial conduct occurs, preventing the defendant from receiving a fair

[2]Of note, the State only introduced and published to the jury photos of Brodie's internal injuries during expert testimony from the State's medical examiner, Dr. Lisa Gavin. Lee did not object to the use of autopsy photos presented during that testimony and did not argue, here or below, that the district court erred in allowing Dr. Gavin to use Brodie's autopsy photos during her testimony. All other autopsy photos published to the jury only depicted Brodie's external injuries. Thus, the contested images, both below and on appeal, depict Brodie's external injuries.

trial. *Rudin v. State*, 120 Nev. 121, 144, 86 P.3d 572, 587 (2004). "The decision to deny a motion for a mistrial rests within the district court's discretion and will not be reversed on appeal absent a clear showing of abuse." *Ledbetter v. State*, 122 Nev. 252, 264, 129 P.3d 671, 680 (2006) (internal quotation marks omitted).

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." NRS 48.035. "This determination rests in the sound discretion of the trial court and will not be disturbed unless manifestly wrong." *Reese v. State*, 95 Nev. 419, 422, 596 P.2d 212, 215 (1979) (internal quotation marks omitted). "By requiring the prejudicial effect of evidence to substantially outweigh its probative value, NRS 48.035 [strongly favors] admissibility." *Krause Inc. v. Little*, 117 Nev. 929, 935, 34 P.3d 566, 570 (2001) (alteration in original) (internal quotation marks omitted). Even "gruesome photos [may] be admitted if they aid in ascertaining the truth." *Browne v. State*, 113 Nev. 305, 314, 933 P.2d 187, 192 (1997). But, if the district court abuses its discretion in admitting unfairly prejudicial evidence, a mistrial may be appropriate. *See Reese*, 95 Nev. at 422, 596 P.2d at 214-15.

We reject Lee's challenge to the admission of the autopsy photos for two interrelated reasons. First, the disputed photos had high probative value. In opening, Lee proffered two theories that made Brodie's autopsy photos particularly probative, namely that (1) Brodie's death was not the result of abuse, but an accidental fall from his Power Wheels toy on Thursday, June 9, 2011; and (2) the fatal blow could have occurred sometime before Tuesday, June 14, 2011. The State used Brodie's autopsy photos, along with testimony from several lay witnesses, to show Brodie's Power Wheels accident did not result in his fatal injuries, and instead, his

death was the result of nonaccidental abuse. Lee's sister, who regularly babysat Brodie, reviewed several autopsy photos and testified that the external injuries depicted were not representative of Brodie's normal bruising. Brodie's grandmother, who also regularly babysat Brodie, provided similar testimony. Brodie's pediatrician testified that facial bruising depicted in an autopsy photo was not present when he saw Brodie, and such bruising would have caused him to contact the Department of Family Services immediately.

The State asked lay witnesses to examine autopsy photos to establish that Brodie sustained his fatal injuries on Tuesday, June 14, 2011, or later. Brodie's pediatrician testified that an autopsy photo showed facial bruising that was not apparent during an examination on Friday, June 10, 2011. Additionally, Brodie's grandmother saw him completely naked on Sunday, June 12, 2011, and testified that several autopsy photos showed many external injuries that Brodie did not have on Sunday. Finally, Lee's friend testified Brodie only had two noticeable bruises on his face on the morning of Tuesday, June 14, 2011, and the autopsy photo he reviewed depicted many additional facial bruises. Therefore, the State used autopsy photos of Brodie's external injuries in a manner that was highly probative, especially in light of the defense theories Lee presented during opening argument.

Second, given the photos' direct probative value, they would need to be exceedingly gruesome for the district court to have abused its discretion in admitting them. Brodie was a young victim of violence, which makes the photographs of his external injuries disturbing. Nevertheless, the injuries shown are not exceedingly gruesome, as they depict extensive bruising, several abrasions, a scleral hemorrhage, and a

torn frenulum. Ultimately, the external injuries shown do not carry a danger of unfair prejudice that substantially outweighs their significant probative value.

Thus, we conclude the district court did not abuse its discretion in admitting these photos during testimony from lay witnesses. For that reason, we further conclude that the district court did not abuse its discretion in denying Lee's motion for a mistrial.

*The State presented sufficient evidence to support the jury's guilty verdict for first-degree murder by child abuse*

Lee claims an essential element of the murder charge against him was not supported by sufficient evidence because no rational juror could have found beyond a reasonable doubt that he inflicted the fatal blow to Brodie's abdomen. Dr. Gavin opined that Brodie's fatal injury was inflicted sometime around 24 hours before his death, while Lee's expert opined that the fatal injury was inflicted at least 48 hours before death. According to Lee, there is insufficient evidence of his guilt because the State alleged the fatal blows occurred when Lee was alone with Brodie, significantly *less than* 24 hours before Brodie's death. We conclude Lee's argument lacks merit.

In reviewing the sufficiency of evidence supporting a jury verdict, this court "view[s] the evidence in the light most favorable to the prosecution" and asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006) (alteration in original) (internal quotation marks omitted). "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *Id.* (internal quotation marks omitted).

Consistent with these rules, we credit Dr. Gavin's testimony, which is more favorable to the State. Dr. Gavin made clear that timing Brodie's injury was far from an exact science, that the 24-hour period she testified to was only meant to provide a general idea of when Brodie suffered the fatal blow, and that the true time period could be off by hours. As such, this court looks for evidence in the record that Lee could have inflicted the fatal injury within 24 hours, more or less, of Brodie's death.

Arica testified that Brodie was cold and stiff when she found him at about 8:50 a.m. Wednesday morning. Dr. Gavin testified that Arica's description was consistent with Brodie dying several hours before Arica discovered him. Therefore, the jury heard testimony that Brodie died sometime around 7:00 a.m. on Wednesday, and a very general guide for when Brodie's fatal injury occurred would be sometime proximate to 7:00 a.m. on Tuesday, June 14, 2011.

Viewing the testimony in the light most favorable to the prosecution, the State has established Brodie was with Arica, Lee, or both during the crucial 24-hour time period when his fatal injury was inflicted. No witness ever saw Brodie with bruising consistent with his autopsy photos, and he was seen naked on Sunday and shirtless on Monday morning. On Tuesday morning, both Arica and Lee's friend had noticed worsening facial bruising. Still, that facial bruising was not as severe as the bruising in Brodie's autopsy photos. Therefore, Brodie must have suffered some kind of abuse on Tuesday when he was only around Arica, Lee, or both.

Arica testified that Lee was alone with Brodie in the car for five to ten minutes on Tuesday in the early afternoon. Based on the "early afternoon" description, Lee was alone with Brodie roughly 17 to 18.5 hours

before he died. Brodie was in the center backseat where both the front driver and passenger could easily reach him. Further, Brodie was sleeping when Arica got out of the car, and when she returned he was screaming and crying. Again viewing the facts in the light most favorable to the prosecution, there is sufficient evidence for a rational juror to conclude beyond a reasonable doubt that the fatal abdominal injury occurred in the car while Lee was alone with Brodie.

Additionally, Arica's description of Brodie's symptoms is consistent with the fatal blow occurring in the car. After returning home on Tuesday in the late afternoon or early evening, Brodie lay in bed until dinner. However, at dinner, he had a depressed appetite and Arica had to spoon-feed him, which was abnormal. Brodie then went to bed. At about 1:00 a.m. on Wednesday, Arica found that Brodie had vomited profusely, covering himself and his bedding in vomit. He vomited again in his bathroom. These symptoms were consistent with the transected duodenum that caused Brodie's death. Brodie also complained of a headache, which was consistent with the significant head trauma he had suffered. Only Lee's sister and Arica testified to noticing symptoms of Brodie's fatal injuries. Lee's sister testified that Brodie had a depressed appetite and headache on Monday, June 13, 2011; Arica disagreed, testifying his symptoms manifested Tuesday evening. Based on the standard of review here, we credit Arica's testimony.

Finally, the State proffered a substantial amount of circumstantial evidence tending to show that Lee abused Brodie. First, Brodie began suffering worse bruising in terms of location, frequency, and severity about two months after Lee began living with Arica and Brodie. The suspicious bruising subsided when Arica got a new babysitter, but

SUPREME COURT
OF
NEVADA

(O) 1947A

7

returned weeks later. Arica was suspicious enough to look into getting a nanny cam. Second, several witnesses noted that in the weeks preceding his death, Brodie seemed afraid of Lee and did not want to be around him. Third, Arica and Lee had significant arguments about Lee's somewhat contentious relationship with Brodie, and Arica had begun looking at new apartments in case things did not improve. Fourth, Lee would go into Brodie's room at night and take him to use the bathroom against Arica's wishes. Similarly, he would close Brodie's door at night against her wishes. Several times a week, Arica would find Brodie's baby monitor turned off in the morning. Fifth, Arica's stepfather believed Lee tried to get information from him about the direction of the police investigation after Brodie's death. Sixth, Lee's friend and sister never cooperated with police. Finally, multiple witnesses testified that Arica was devastated after Brodie's death.

Based on the foregoing evidence and viewed in the light most favorable to the prosecution, a rational jury could have convicted Lee of Brodie's murder beyond a reasonable doubt. Therefore, sufficient evidence supports Lee's murder conviction.

*Any error that occurred during Lee's probable cause determination is harmless*

Lee argues there was insufficient evidence for the justice and district courts to find probable cause that he murdered Brodie.[3] Having

---

[3]Lee has only conclusorily argued that (1) there was not probable cause to support the child abuse charge against him, and (2) his child abuse conviction was not supported by sufficient evidence. Because he has failed to meaningfully argue these issues, we decline to address them. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

concluded that the jury's verdict is supported by sufficient evidence, we now also conclude that any error that may have occurred during Lee's probable cause determination is harmless in light of the jury's guilty verdict. *See Dettloff v. State*, 120 Nev. 588, 596, 97 P.3d 586, 591 (2004) ("Finally, that the jury convicted [the defendant] under a higher burden of proof cured any irregularities that may have occurred during the grand jury proceedings."); *see also Echavarria v. State*, 108 Nev. 734, 745, 839 P.2d 589, 596 (1992) ("Any irregularities which may have occurred in the second grand jury proceeding were cured when [the defendant] was tried and his guilt determined under the higher criminal burden of proof."); *accord United States v. Mechanik*, 475 U.S. 66, 70 (1986).

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Pickering

cc:   Hon. Stefany Miley
      Clark County Public Defender
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

SAITTA, J., concurring in part and dissenting in part:

I concur with my colleagues' determination that the State presented sufficient evidence to support the jury's guilty verdict for first-degree murder by child abuse. I also concur with my colleagues' determination that any error that occurred during Lee's preliminary hearing with regard to the probable cause determination was harmless. I dissent, however, with regard to my colleagues' analysis on the issue of whether the district court abused its discretion in denying Lee's motion for a mistrial on the basis of the admission of Brodie's autopsy photographs.[1]

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." NRS 48.035(1). As previously stated, Lee proffered that (1) Brodie's death was not the result of abuse but an accidental fall from his Power Wheels toy on Thursday, June 9, 2011; and (2) the fatal blow could have occurred sometime before Tuesday, June 14, 2011. The lay witness testimony provided at trial, including the testimony of Brodie's pediatrician, Lee's sister, and Brodie's grandmother, was sufficient to establish that Brodie sustained his fatal injuries on Tuesday, June 14, 2011, or later.

Because the issue was the *timing* of the injuries, not the fact that the injuries existed, the autopsy photographs did not aid in ascertaining the truth and they should not have been admitted. *See Browne v. State*, 113 Nev. 305, 314, 933 P.2d 187, 192 (1997) (stating that "gruesome photos [may] be admitted *if they aid in ascertaining the truth*"

---

[1] I disagree only in the analysis of this issue. It is likely, given the testimony of lay and expert witnesses at trial, that any error committed by the district court in admitting Brodie's autopsy photographs would have been harmless error.

(emphasis added)). Furthermore, the fact that Brodie was a child only made the photographs more prejudicial. Accordingly, I believe that the prejudicial nature of the photographs substantially outweighed their probative value; thus, they did not need to be exceedingly gruesome to be excluded, as my colleagues suggest.

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A